## THE STATE, DEFENDANT IN ERROR, v. GUSTAVE AESCHBACH, PLAINTIFF IN ERROR.

Argued October 23, 1930—Decided February 2, 1931.

434

For the plaintiff in error, *Joshua R. Salmon.*

For the state, *Orville V. Meslar,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error was indicted for the murder of his wife. The trial resulted in a verdict of guilty of murder in the first degree, and the present writ of error is sued out by him to test the validity of the judgment entered upon that verdict.

The proofs submitted on the part of the state showed that the plaintiff in error married his wife in October, 1918; that they lived together as husband and wife until the latter part of the year 1929; that the wife then took a position as nurse in the family of one Byrnes, not far from the home in which before that she and her husband had been living, and that she occupied this position until the end of March, 1930, when the killing took place. The proofs further showed that two or three days before the shooting the defendant purchased cartridges to be used in a revolver that he owned; that he called up his wife on the telephone a few days later, and asked her to meet him, which she declined to do, telling him that she was through with him; that about half-past seven on that evening he went to the Byrnes home, knocked at the back door and asked to see his wife; that she was notified of his call, and went outside the door to talk to him; and that as she came out he shot her three or four

times, killing her. The act of killing was admitted by the defendant, but he attempted to avoid responsibility for it by submitting testimony tending to show that he was insane at the time when the killing took place.

The first contention submitted to us as a basis for reversing the conviction is that the court erroneously admitted in evidence certain photographs taken of the body of the deceased as she lay on the ground near the rear door of the Byrnes house, where she fell when she was shot. The argument in support of this contention is that their admission injected an element of horror in the case, which would naturally excite, embitter and inflame the jury against the defendant. Assuming this to be true, it does not render the admission of the photographs illegal. Carrying the contention to its logical conclusion, a court of first instance, on the trial of an indictment for murder, is barred from admitting proof of any material fact which would tend to inject an element of horror into the case, and so embitter and inflame the jury against the defendant, although without such proof the state would be unable to support the charge laid in the indictment. We conclude that this contention is without merit.

Next, it is argued on behalf of the plaintiff in error that the court erroneously refused to permit a witness named Eichlin, who was called by defendant's counsel, to testify to his opinion of the mental condition of the defendant at the time of the killing. This witness was not an expert on insanity, but he had been a schoolmate of the defendant many years before, and had met him once in a while thereafter, but very seldom, and apparently after they ceased to be schoolmates had not had any association with him except of the most casual kind. We consider that, in view of these facts, the testimony offered was properly excluded. Proof that the defendant when he was a schoolboy was not entirely normal, if that was the fact, affords no basis for the expression of an opinion by a non-expert witness of his mental condition many years afterward. The testimony of a non-expert witness depends for its admissibility upon his knowledge of the defendant's mental condition resulting from personal associa-

tion with him at the time of the killing or for a reasonable period preceding it, and this was not the situation in the present case.

The next contention on the part of the plaintiff in error is that the trial court improperly stated in the presence of the jury that what, in his opinion, would justify the admission of testimony of a non-expert witness as to the mentality of the defendant. What the court said was in explanation of the ruling excluding the testimony of the witness Eichlin. A mere statement to counsel of the reasons upon which a judge bases his decision does not constitute legal error, even though the reasons are unsound. The error consists in the improper admission or exclusion of the evidence to which the reasons apply. We find nothing of merit in this contention.

Next, it is urged that the trial court committed error in refusing to charge the following request submitted on behalf of the defendant: "In this case, wherein mental defect or disease is pleaded as a defense, the question is whether the accused be guilty or not guilty, and in this fact of guilt is involved the fact of the evil mind, and in this relation it is a fundamental maxim that the act itself does not make a man guilty, unless his intention were so." Our examination of the charge of the court upon this subject leads us to the conclusion that the jury was instructed in compliance with this request, in so far as it stated a correct legal principle.

Next, it is urged that the trial court erred in refusing to charge the following request submitted on behalf of the defendant: "If you find that at the time of the shooting the defendant was emotionally insane, and by emotional insanity is meant such insanity that depends upon the mere emotions of the time arising from some defective or perverted moral sense, which begins on the eve of the act in question and ends when it is finished, then your verdict should be not guilty." This request is apparently based upon the theory that when a person is suffering from emotional insanity, and as the result thereof takes the life of another, he is not guilty of the crime of murder, although he perceives and appreciates the moral quality of his act. But, as was stated by the Supreme Court

in the case of *State* v. *Carrigan*, 93 *N. J. L.* 268, 272, the doctrine that a criminal act may be excused or mitigated, where the defendant has the mental capacity to appreciate his legal and moral duty with respect to it, has no place in the law. This case was affirmed by this court on the opinion of the Supreme Court (94 *Id.* 566), and the doctrine there laid down was followed by us in the case of *State* v. *Noel*, 102 *Id.* 659, 677. This doctrine manifestly is applicable to the case now under review, and the request now under consideration was, consequently, properly refused.

The next ground for reversal alleges that the court committed error in refusing to charge the following request: "If you find from all the evidence produced that the defendant was temporarily insane, not having the capacity to distinguish between right and wrong, at the time of the shooting, even though you find him to be sane at the present time, then your verdict should be not guilty." In response to this request, the court charged as follows: "If you find from all the evidence produced that the defendant was insane, not having the capacity to distinguish between right and wrong, at the time of the shooting, even though you find him to be sane at the present time, then your verdict should be not guilty." This instruction was, in our opinion, in strict compliance with the request submitted. It is true that it does not contain the word "temporarily," which appears in the request, but the statement, "if you find that the defendant was insane at the time of the shooting," covers temporary as well as permanent insanity.

We are next asked to reverse this judgment for failure to charge the following request: "The opinions of non-professional witnesses as to the insanity of the defendant are competent evidence to go to the jury, if grounded on facts and circumstances within their personal knowledge." The court charged this request in the very words contained in it, except that for the word "opinions" in the beginning of the request the court substituted the word "testimony." The testimony of such a witness includes both his opinion and also the facts upon which it is founded. This ground for reversal we consider without merit, for the reason indicated.

It is next contended that the court committed error in cross-examining the defendant with relation to the purpose which led him to go to the house where his wife was living at the time of the shooting. These questions were all of them pertinent and material. The right of the court to ask them cannot be successfully controverted. We conclude, therefore, that this contention also is without merit.

Lastly, it is argued as a ground for reversal that the finding of the jury that the defendant was not so insane at the time of the commission of the murder as to absolve him from responsibility, which was the necessary inference to be drawn from the verdict, is contrary to the weight of the evidence. Our examination of the proofs sent up with the writ of error satisfies us that there is nothing of merit in this contention; that the jury was fully justified in finding that the defendant appreciated the nature and quality of the act which he was doing and knew that this act was a wrongful one.

The judgment under review will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.