MARION R. TOBISH, PLAINTIFF-RESPONDENT, v. CARRIE COHEN AND ROBERT WEIDNER, DEFENDANTS-APPELLANTS.

GUSSIE R. SMITH, PLAINTIFF-RESPONDENT, v. CARRIE COHEN AND ROBERT WIEDNER, DEFENDANTS-APPELLANTS.

Submitted October 28, 1932—Decided January 31, 1933.

For Marion R. Tobish, plaintiff-respondent, *Samuel Koestler*.

For Gussie R. Smith, plaintiff-respondent, *Augustine V. Gribben*.

For Carrie Cohen, defendant-appellant, *Harry Heher* and *Heine & Laird*.

The opinion of the court was delivered by

WELLS, J.  This is an appeal from two judgments rendered on verdicts for the plaintiffs in the Mercer Circuit of the Supreme Court.

The plaintiffs, Marion R. Tobish and Gussie R. Smith, were invited by the defendant Carrie Cohen to ride with her in her Cadillac automobile from Trenton to Atlantic City and back.

The car was driven by Raymond Gaskill, Mrs. Cohen's chauffeur.

At the intersection of the White Horse Pike with a cross road about one and a half miles to the north of Egg Harbor, the Cohen car traveling toward Atlantic City came into collision with the car owned and operated by Robert Weidner, resulting in injuries to the plaintiffs.

At the time of the accident the Weidner car, facing toward Atlantic City, was at a standstill on the right side of the White Horse Pike, for the purpose of making a left-hand turn into the cross road.  Gaskill, defendant's chauffeur, did not become aware of the situation until too late to avoid a collision.

Suit was brought against Carrie Cohen and Robert Weidner, but there being no evidence of negligence on the part of Weidner, there was a direction of a nonsuit in his favor, from which no appeal is taken.

There was no motion for nonsuits or direction of verdicts in favor of the defendant in the instant case.

The facts briefly are as follows:  The Cadillac car was a large heavy Imperial Limousine type.  On the front seat beside Raymond Gaskill was his wife.  The two plaintiffs and Mrs. Cohen occupied the back seat.

Before reaching the White Horse Pike and about eighteen to twenty miles from the place of the accident and about fifteen minutes prior thereto, the defendant's car had been driven at such a rate of speed over a depression or bump in the road, at or near Haddonfield, as to throw the plaintiffs to the roof of the car, whereupon Miss Tobish exclaimed to the chauffeur: "What's the matter with you—drive slower."

Mrs. Smith, who knew the chauffeur, said: "Raymond have a heart—we are in no hurry to get to Atlantic City." He apologized and slackened his speed.

After they reached the White Horse Pike, which is for the most part straight, level and at least forty-two feet wide, the occupants of the rear seat conversed and, there being very little traffic, the plaintiffs did not pay much attention to the road. . The car being heavy, ran smoothly and the speed was not particularly noticeable on a concrete road in the open country.

When about one hundred feet distant Mrs. Smith saw the car of Weidner stopped on the right side of the White Horse Pike. At the same time the Cadillac picked up speed and was going very fast—at least fifty miles an hour—and before she could say anything to Mrs. Cohen, they were right on top of the Weidner car and the accident happened. Mrs. Smith said that during the ride down the Pike at times she was looking ahead and at times she was talking. There was nothing unusual about the operation of the car to attract their attention until they were within one hundred feet of the Weidner car.

Miss Tobish had been stunned when her head struck the roof of the car as it went over the bump at Haddonfield, and she was not feeling well and instead of looking ahead after that, she looked out the side windows. She did not notice the rate of speed at which the car was traveling as the road was level and clear, the country open, and they were riding smoothly in a heavy comfortable car. She did not see the car ahead until the brakes of the Cadillac "screeched" about twenty-five feet away from the Weidner car, and she had time only to exclaim—"Oh my God we are done," and then the accident occurred.

The first ground for reversal urged is that the court charged the jury that the negligence of the driver could be imputed to the owner and that if there was such negligence which resulted in injuries, the defendant would be liable.

Appellant says that this was tantamount to saying to the jury that these passengers were under no duty of care for

their own safety; and appellant argues that the remarks made by the two plaintiffs to the chauffeur, immediately after they were thrown to the roof of the car (eighteen to twenty miles from the scene of the accident), showed that plaintiffs had undertaken to assume some manner of control over the operation of the car, and that although Mrs. Smith realized they were traveling at a rapid rate of speed, she made no complaint, and although the road was straight and she was paying close attention to the roadway, she did not see the Weidner car until one hundred feet from it and that this is evidence of contributory negligence; that Miss Tobish didn't make any observation or take any notice of the speed of the car, in spite of the warning she had of the carelessness of the driver in driving over the bump at Haddonfield, and this is evidence of contributory negligence on her part.

Appellant cites *Schroeder* v. *Public Service Railroad Co.*, 118 *Atl. Rep.* 337, a Supreme Court case (not officially reported), where the trial court charged the jury: "If the man who drove the car was not contributorily negligent and the defendant was negligent under the rules which I have given you, then all the plaintiffs are entitled to a verdict, the driver included."

The Supreme Court, commenting on this charge, said:

"The infirmity of this instruction is that it necessarily implies that the passengers owed no duty of care for their own safety in any situation wherein the driver was not himself negligent. To this we cannot agree. Even if he were free from blame there may still well have been something which they or one or more of them should have seen or heard, said or done, which would have avoided the accident."

The facts and circumstances of the Schroeder case differ materially from those of the instant case.

The Schroeder case was on a rule to show cause; that suit was by an invitee, not against the owner of the automobile in which he was riding but against the Public Service Railroad Company, which had left unguarded in a public street a large excavation visible and obviously dangerous to the occupants of the automobile which was heading directly toward

and finally went into it. Under such circumstances there may well have been something which the passenger, who was in a position to see and realize the dangerous situation, could have said or done to avoid the accident.

The court in the Schroeder case charged the jury in effect that if the driver was not negligent the occupants were not guilty of contributory negligence, whereas in the instant case the court merely failed to submit to the jury the question of contributory negligence of the passengers in the absence of any evidence of anything tending to show contributory negligence on their part.

In the instant case there was no evidence of anything which either plaintiff could have seen, heard, said or done, which would have avoided the accident.

The fact that they did protest once about the operation of the car twenty miles away from the scene of the accident did not impose upon them a continued duty to make such protest, nor did it show an assumption of the control of the operation of the car or its driver. It did not appear that they were conscious immediately before the accident that the speed was excessive and, except for a situation that should have been known to the driver. it does not appear that they knew of the imminence of any danger.

There is nothing apparently dangerous to the occupants of an approaching automobile, in a car at a standstill on a wide level road with ample room on either side to pass in safety.

The testimony showed that Gaskill was looking ahead, watching the road and apparently attending to his duties as a chauffeur.

There was nothing to indicate (until it was too late to give a warning) that the situation was not known to Gaskill or that the car operated by him might run into the Weidner car.

It cannot be reasonably required of invitees sitting on the back seats of automobiles, who have not assumed any greater control over the operation of automobiles than the plaintiffs did in this case, to call the attention of the driver thereof to the obvious, when the obvious is not apparently dangerous.

Such a requirement would make for confusion and accidents, rather than for control and safety.

"In the absence of any facts or circumstance indicating the contrary he [the occupant] need not anticipate that the driver, who had exclusive control and management of the vehicle, will enter a sphere of danger, omit to exercise proper care, to observe the approach of other vehicles, or fail to keep the speed of the vehicle within proper limits, or otherwise improperly increase the common risks of travel." 45 *Corp. Jur.* 1016.

The rule is that while the negligence of the operator of an automobile is not chargeable to a passenger, still the passenger is bound to exercise such care for his own safety as the exigencies of the situation require.

There is not a scintilla of evidence in the instant case of any violation on the part of the plaintiffs of this rule.

This court held in *Mittelsdorfer* v. *West Jersey and Seashore Railroad Co.,* 77 *N. J. L.* 698, that the fact that the plaintiff was a guest did not relieve her from exercising ordinary care. In that case the plaintiff did not see the train which collided with a wagon in which she was riding as an invitee, and the court said that, therefore, no fault could be attributed to her for failure to apprise the driver of the impending danger.

"It is firmly settled that it is only where the plaintiff's act is a negligent one and proximately contributes to the defendant's negligence that caused the plaintiff's injury, that the latter is debarred of a recovery." *Osbun* v. *DeYoung,* 99 *N. J. L.* 204; citing *New Jersey Express Co.* v. *Nichols,* 33 *Id.* 434.

The second ground of appeal is that the court failed to charge the jury on contributory negligence.

In support of this point appellant cites *Lambert* v. *Trenton and Mercer County Traction Co.,* 103 *N. J. L.* 23, affirmed by a divided court, 104 *Id.* 175, which held:

"When the court entirely omitted from its charge a statement of the fundamental rule of law governing the assessment of damages by the jury, and after the court's charge

counsel requested, orally, that the court charge with reference thereto, the court's refusal to charge the jury the rules governing the assessment of damages, because such request had not been submitted in writing before the court delivered its charge, was erroneous."

We have no such situation here. The trial court had finished his charge and directed the jury to retire, whereupon the attorney of the appellant took two exceptions, one as to the charge relating to negligence, and the second as to the failure of the court to charge on the subject of contributory negligence. Nowhere in the case was there a request by defendant's counsel that the trial court should charge on the question of contributory negligence. It is settled that in the absence of such request, there is no error. *Daggett* v. *North Jersey Street Railway Co.,* 75 *N. J. L.* 630; *Gutowski* v. *Goldberg,* 153 *Atl. Rep.* 375; *Osbun* v. *DeYoung, supra.*

Defendant's counsel did not endeavor to correct an error, if there was one. Counsel did not ask the court to recall the jury and charge them on the question of contributory negligence as was done in the Lambert case, but merely endeavored to except to the failure of the court to charge. This is not proper practice.

In the instant case the subject-matter desired to be submitted was a matter of defense, and if counsel conceived that a pertinent legal principle had been omitted by the judge in his charge, he should have requested the desired instruction.

In the case of *Osbun* v. *DeYoung, supra,* Mr. Justice Kalisch, delivering the opinion of this court, said:

"It is urged that the court erred in omitting to charge on the subject of contributory negligence. No such request was made to the court. It is true that counsel took an exception, 'in that the court did not take up the question of contributory negligence.' But this was not legally sufficient to make it a basis for an appeal. We have repeatedly held that an exception cannot be properly taken to a failure on the part of a court to charge a legal proposition. If counsel desired to have the question of contributory negligence considered by the jury it was incumbent upon him to point out to the court, by a

request, what conduct on part of the plaintiff, if believed by the jury, constituted negligence contributing to his injury."

Furthermore, we think that the court was right in not charging contributory negligence. The defense was either that the Weidner car suddenly stopped in front of the car driven by Gaskill, without giving notice, or that because of an oily spot in the road the defendant's car skidded into the Weidner car and overturned.

There was no attempt during the trial to prove that either plaintiff in any manner contributed to the happening of the accident. The case, therefore, comes clearly within the principle of law declared in *Illis* v. *Oberle,* 106 *N. J. L.* 245, where this court said:

"The sole defense set up by the evidence of the defendant was an absolute denial of any collision. The trial judge in his charge to the jury gave no instructions on the subject of contributory negligence. It is admitted that he had not been requested to give such instructions. There was, therefore, under our decisions, no error in such failure."

The Supreme Court in *Cannazzari* v. *Triangle Bus Co.,* 6 *N. J. Mis. R.* 345; 141 *Atl. Rep.* 165, said:

"We also think that contributory negligence of the deceased was not an issue in the case, and therefore the trial judge did not err in failing to submit it to the jury. The proofs were that the deceased was riding as a passenger in the rear seat of a Ford touring car being driven by one Sherman. A collision occurred between this car and a bus of the defendant company. There was no evidence upon which it could be held that the deceased was in anywise responsible for the operation of the touring car or for the accident which caused his death."

A plain reading of the testimony in the case now under consideration discloses an utter absence of any conduct on the part of the plaintiffs which would warrant the slightest inference of their having failed to exercise ordinary care, nor is there any evidence of any negligence on their part in anywise contributing to their injuries.

We are of the opinion, therefore, that the judgments of the Supreme Court should be affirmed.

*For affirmance*—The Chancellor, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Brogan, Kays, Hetfield, Wells, Kerney, JJ. 12.

*For reversal*—None.