Defendant appeals from judgments entered in favor of plaintiff Carl Wadell in the sum of $6,500, *Page 134 
and in favor of plaintiff Edgar Dygert in the sum of $500, with costs, on verdicts of a jury in the Law Division of the Essex County Court.
The appellant urges six grounds of appeal: (1) "The trial court erroneously admitted a photograph (Exhibit P-2) in evidence;" (2 and 3) the trial court erroneously admitted evidence of a pre-existing disease, and erroneously charged the jury that it was to consider whether or not there was an aggravation of a pre-existing disease, although not pleaded in the complaint; (4 and 5) that the trial court erroneously charged the jury; and (6) that the verdict was contrary to the weight of the evidence.
Plaintiffs' actions are based upon the allegation that the negligent operation of defendant's motor bus was the proximate cause of a collision between said bus and a truck in which they were riding. Defendant denied the charge of negligence in the operation of its bus, and asserted that the plaintiff Dygert, the driver of the truck in which Wadell was seated, was guilty of negligence producing the collision of the vehicles in question, and that Dygert and Wadell were both guilty of negligence which contributed to the happening of the accident.
It appears that plaintiff Dygert was driving a Wells Fargo covered armored truck in a northerly direction on Broad Street, in Newark, at about 5:20 P.M. on December 6, 1945. At the intersection of Academy Street, which runs westerly from the west side of Broad Street, Dygert made a left turn to proceed into Academy Street, and a collision occurred between the truck and defendant's bus, operated by one John Fetkin, which was being driven in a southerly direction from Raymond Boulevard toward said Academy Street. The truck was overturned at the southwest corner of Broad Street and Academy Street, and both plaintiffs claim injury as a consequence of said collision.
Appellants' first ground of appeal has to do with the admission of a photograph showing the plaintiff, Wadell, lying on a stretcher. Dygert testified that after the accident, Wadell was on top of him and was unconscious; that he was *Page 135 
removed from the truck by Emergency Squad policemen and laid on a stretcher for the ambulance; that his eyes were closed and that he was unconscious when the photograph was taken ten minutes after the accident. The only objection was that it was "immaterial and irrelevant." There was no denial that Wadell was injured; nor was there any denial that he was unconscious after the accident and removed to a hospital. He testified that he had no recollection of anything from the time he was taken out of the truck until he was in the ambulance.
We do not regard it necessary to pass upon the question urged by appellant as to its admissibility. In no event was it harmful to appellant, as it manifested nothing that was not the subject of uncontradicted proof as to Wadell's condition. Cf. State v.Aeschbach, 107 N.J.L. 433 (E. A. 1931); State v. Fine,110 Id. 67 (E. A. 1933).
Points 2 and 3 have to do with the admission of testimony as to the existence and aggravation of a pre-existing disease, because, it is claimed by appellant, it was not pleaded in the complaint as special damages. The complaint alleged that plaintiff was "greatly hurt and wounded and became and was sick, sore, diseased, maimed, lame and disordered, disabled and debilitated," and that "as a result of the injuries sustained as aforesaid, plaintiff was obliged to and did expend divers large sums of money" for medical and surgical attention, etc., in an effort to cure himself of the "aforesaid wounds, injuries and ailments caused as aforesaid." Plaintiff's doctor testified to ailments from the aggravation of an existing Paget's disease. Defendant's witness, a Doctor Kraker, testified that he examined Wadell on December 26, 1945, 20 days after the accident. He further testified in response to a question by appellant's counsel, that Wadell had some X-rays with him that showed evidence of Paget's disease, which is a chronic disease of the bone in middle life, but the accident had no effect on that. If it had, he would have broken some of the bones. They were not broken. On cross-examination he testified that he had been one of appellant's doctors for 25 or 30 years. He was asked: "You examined these plaintiffs *Page 136 
for the purpose of testifying in court if necessary? A. For the purpose of informing the company what I found." He further testified: "Here is a man who was apparently ailing, and if he didn't have this X-ray he would never have known he had Paget's disease. He has a job and he is injured and reports to the company through himself or his attorney and has an examination to find out what happened to him at the time of the accident. The previous history is to determine whether or not he has any condition which might have been aggravated as a result of this accident. I say no."
It clearly appears that there was claim for wounds, injuries and ailments, as well as for debilitation, etc. The defendant was fully aware, as appears from its medical witness' testimony, of the condition involved, and was prepared to meet any such claim. In DePalma v. Economy Auto Supply Co., 3 N.J. Misc. 827
(Sup. Ct. 1925), not officially reported; affirmed on opinion below, 102 N.J.L. 714 (E. A. 1926), the same question was raised by appellant and it was held that an allegation that plaintiff "sustained severe and permanent injuries, to wit, fractured skull, broken shoulder, and was injured about her ankle, left side and left arm," was sufficient to warrant the charge of the trial court that "If, by reason of the injuries, any previous disability of the child was aggravated you may allow for that."
There was not error in admitting the testimony, much of which was in the record before any objection was made thereto, and of which appellant was fully informed by its medical examiner, nor was there error in the submission of this question to the jury.
The next ground for reversal urged is that the trial court erroneously charged the rule of law applicable to the operation of an automobile making a left turn on the highway.
At the conclusion of his charge, the judge asked if there were any requests, whereupon counsel for the appellant said: "Yes, as to making a left turn." The judge said: "The principle of law applicable to the making of a left turn is that if a person is making a left turn across a line of traffic, he must seek an opportune time to do so. *Page 137 
"Mr. Boyd: He must use a high degree of care and seek an opportune time, I believe is the language, if I recall it correctly."
After some further slight discussion and perusal of some printed matter, all of which took place in the presence of the jury, the following appears:
"The Court: The language is to use great care and seek an opportune time. To that extent I modify what I said earlier. The jury may retire temporarily."
Objection was made to other portions of the court's charge, but no mention was made of the portion above. The objection now urged is that there was no specific withdrawal of the first statement, and that the use of the word "modified" was confusing. This is without merit, because the court added to his previous statement and did not change it, but clearly placed a higher duty upon the plaintiff.
The next ground for reversal is that the court used the following language in his charge to the jury, after stating the conflicting testimony as to how the collision occurred. "Now, when you have reached that conclusion, you are not able to say that Mr. Wadell is right or Mr. Dygert is right or the Public Service is right, until you have applied to those facts the principles of public policy, the principles of law, that have been settled to guide all of us for hundreds of years in New Jersey * * * and what they should have done was to act as reasonably prudent men under the circumstances of the case. Here we come to the simple principles of law which you take, as I explained, and apply to the facts as you find them." He then proceeded to charge the applicable rules of law. The jury could not have been misled by the use of the language complained of, because the words immediately following were "the principles of law," and the court thereafter used the word "law" throughout his charge. We discern no error in this respect.
The next point is that the verdict is contrary to the weight of the evidence.
Briefly, the conflict of testimony was largely with respect to the operation of the truck by Dygert. He testified that he *Page 138 
drove north on Broad Street, which is an unusually wide street, and stopped at the left side of the north bound lane, opposite the south side of Academy Street, waiting for the light to change so that he could proceed to make a left turn into Academy Street. He and the other two occupants of the truck testified that the bus was stopped by a red light at Raymond Boulevard, which was approximately 140 to 160 feet distant from Academy Street. Their testimony was that there was no other traffic in the south bound lane when the truck turned left and proceeded to the entrance to Academy Street, when Dygert slowed down to permit a pedestrian to cross from one side to the other side of Academy Street. It then appears that, while so slowed down, the bus came south and struck the truck and it was turned over on its left side on the southerly pavement of Academy Street. Testimony for appellant by some witnesses was that the truck was hurried toward Academy Street when the bus was eight to ten feet from the northerly side of Academy Street. It is clear, however, that the truck was entering Academy Street when the collision occurred.
It is not argued that there was not a question for jury determination. The argument is that the testimony in favor of defendant outweighed that of plaintiffs. In Cascone v.Hendrickson, 8 N.J. Misc. 229 (Sup. Ct. 1930), the court said:
"When the disposition of a case hinges upon the veracity of witnesses, it is obvious that a jury who sees the witnesses, and has an opportunity to observe their demeanor on the witness stand is in a more advantageous position to judge as to the credit to be given their testimony than can be gathered from a reading of the testimony in print. * * *
"It seems to be necessary to repeatedly state that the verdict of a jury will not be set aside upon the ground that it is against the weight of the evidence, unless the verdict clearly evinces that it is the result of mistake, partiality, prejudice or passion."
A careful consideration of the testimony leads to the conclusion that there was ample competent evidence to warrant the verdict of the jury.
The judgment is affirmed, with costs. *Page 139