50 N.J. Super. 329 (1958)
142 A.2d 239
PAUL AMBROSE AND ISABEL AMBROSE, PLAINTIFFS-RESPONDENTS,
v.
LeROY CYPHERS, DEFENDANT-APPELLANT, GEORGE DONNELLY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 10, 1958.
Decided June 2, 1958.
*331 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Abraham I. Harkavy argued the cause for defendant-appellant (Messrs. Harkavy and Lieb, attorneys; Mr. Jerome S. Lieb on the brief).
Mr. Robert L. Clifford argued the cause for plaintiffs-respondents (Mr. Fremont Donley and Messrs. Mead, Gleeson, Hansen & Pantages, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is a negligence action brought by the plaintiffs, Paul and Isabel Ambrose, husband and wife, who were invited guests in an automobile owned and operated by the defendant, LeRoy Cyphers, which was involved in a collision with the automobile of the defendant Donnelly. *332 Plaintiffs recovered judgments on a jury verdict against both defendants totaling $106,000. Defendant Cyphers has appealed.
The factual circumstances are briefly as follows. The plaintiffs and defendant Cyphers and his wife returned to East Orange after spending the evening attending the theater in New York. They stopped at the Suburban Diner where Cyphers parked his car at the northerly curb of Central Avenue, facing west, about 250 feet west of the intersection of Central Avenue and Harrison Street. After leaving the diner at about 1 A.M., the party returned to Cyphers' car, Mrs. Ambrose occupying the rear seat in about the left center and her husband sitting at her right side. Cyphers sat in the driver's seat with his wife in the right front seat. They were only a few minutes from the Ambrose home and Cyphers had agreed to take the plaintiffs there. The collision occurred while Cyphers was attempting to make a left-hand U-turn on Central Avenue, a street 60 feet wide, divided down the center by a solid white line, with broken white lines running parallel with, and about ten feet distant from both sides of the center line.
Plaintiff Isabel Ambrose testified that just before the collision she was sitting half facing her husband, engaged in conversation with him. As Cyphers started to draw away from the curb she glanced over her right shoulder back toward Harrison Street and saw in the intersection the headlights of an approaching car. She gave as a reason for glancing back that "It was because I was half turned this way. It was an involuntary thing because I saw headlights." When asked if she did or said anything at that instant, she said, "No, I didn't," but resumed the conversation with her husband. She recalled that in a few seconds their car was brightened by the lights of the oncoming vehicle.
Mrs. Steel, sister-in-law of Mrs. Ambrose, testified that at the hospital shortly after the accident she discussed with Cyphers how the accident occurred and, in describing the lights of the oncoming car, Cyphers said to her, "Until my dying day I will never forget the headlights in my mirror," *333 and further he said that while pulling away from the surb, "all he saw was the glaring of the headlights." She further testified that Cyphers said to her that "he [Cyphers] blames himself and had he been more careful the accident would not have happened."
Cornelius J. Landry, who sells papers, testified that he was standing in front of the diner, and as the Cyphers car was pulling away from the curb, he heard the Donnelly "car coming up Central Avenue with a roar." His attention was attracted by "the roar of the motor from the speed." While Cyphers was in the process of making the U-turn, Landry saw the Donnelly car approaching over a slight grade just beyond Harrison Street and saw it go through the red traffic light at that intersection. He said that there were cars parked in front of the Cyphers vehicle on the same side of the street. Landry's testimony as to speed, noise and Donnelly's car going through the red traffic light was corroborated by Peter Rosin, a passing motorist.
Cyphers testified that after he got into his car he lowered his window and looked west and saw no moving vehicles. He said that he looked to the east and could see 50 to 100 feet beyond the intersection of Central Avenue and Harrison Street. He did not see the headlights of any vehicle moving west on Central Avenue at that time, so he proceeded to pull away from the curb, intending to make the U-turn. He made a further observation to the west and saw no vehicle approaching, then he looked to the east or left and saw "this [the Donnelly] car practically on top of me" and in a "split second" after he first saw the Donnelly car, the collision occurred. At the time of the impact, he said, the left front wheel of his car had reached the white center line of Central Avenue. The witnesses agreed that Cyphers was traveling no more than five miles an hour and that Donnelly's car was going at a terrific speed. His testimony was not too definite as to the precise point when he first saw Donnelly's car.
A police officer testified that he had given chase to the Donnelly vehicle after it had passed a red traffic light about *334 a mile and a half east on Central Avenue. Donnelly's car was traveling at speeds from 60 to 65 miles an hour and passed through another red light during the chase. Three blocks before Harrison Street, the police officer slowed down, having lost sight of the Donnelly vehicle, so that he was not an eye witness to the accident.
Cyphers denied telling Mrs. Steel that he was to blame for the accident and further denied having said he would never forget the approaching headlights of Donnelly's car, but admitted talking to her of the accident soon after it happened. On cross-examination he testified that he was unable to recall what he may have said to her. When asked if he had placed any reliance on the traffic light at Harrison Street before attempting to make the left U-turn, he said no, that he did not notice the traffic light.
Defendant Donnelly filed no answer to the complaint nor did he file an answer to Cyphers' cross claim. He was not called to testify. The defendant Cyphers had taken a default judgment against Donnelly, but the judge ruled that the assessment of damages against Donnelly would take place on another day, thus severing the respective claims.
The initial argument relates to the judge's charge when the jury were instructed as follows:
"If you find from the evidence that the automobile of the defendant Cyphers standing in a parked position at the north curb of Central Avenue facing west was started by Cyphers with the intention of proceeding to make a left-hand U turn across Central Avenue so as to proceed east, then I charge you that it was the duty of the defendant Cyphers to exercise great care and to seek an opportune time to make such a left turn or U turn."
Previously in the charge the court had instructed the jury that the defendant was under a duty to exercise "reasonable care," to exercise such care as "a reasonably prudent person would exercise under all the circumstances presented * * *."
After the jury had retired, it sent a note to the judge reading as follows:
"Is great care or reasonable care a consideration in this matter?"
*335 The judge, answering the inquiry, said
"Yes, it is. You must remember that they were invited guests in the car of the defendant Cyphers and I said to you that if you find from the evidence that prior to the accident the automobile of the defendant Cyphers was standing in a parked position at the north curb of Central Avenue facing in a westerly direction and it was his intention to start from that position and proceed to make a left U turn to go east on Central Avenue it was the duty of the defendant Cyphers to exercise great care and to seek an opportune time to make such left turn, and that if he failed to exercise great care or failed to exercise such great care then he violated the duty that the law placed upon him with respect to any invited guest, and this constitutes negligence on the part of the defendant Cyphers."
At the conclusion of the court's charge, objection was made by the defendant to the use of the expression to exercise "great care" rather than "a greater degree of care than ordinary care must be used" commensurate with the circumstances. He argues that the standard of care is "reasonable care according to the circumstances of the case."
The question of proper instructions by the court in its charge to the jury in negligence actions concerning left-hand turns across oncoming traffic, or U-turns, with particular discussion of the "degree of care" required under varying facts and circumstances, has received frequent consideration by our courts. Felix v. Adelman, 113 N.J.L. 445 (E. & A. 1934); Rynar v. Lincoln Transit Co., Inc., 129 N.J.L. 525, 533, 534 (E. & A. 1943); Senofsky v. Frecker, 10 N.J. Misc. 505, 508, 159 A. 797 (Sup. Ct. 1932); Anderson v. Cassidy, 119 N.J.L. 331 (Sup. Ct. 1938); Oliver v. Leonardo, 135 N.J.L. 210 (Sup. Ct. 1947); Wadell v. Public Service Coordinated Transport, 3 N.J. Super. 132, 136 (App. Div. 1949); Motorlease Corp. v. Mulroony, 13 N.J. Super. 556 (App. Div. 1951), affirmed 9 N.J. 82 (1952); O'Neil v. Bilotta, 18 N.J. Super. 82, 88 (App. Div. 1952), affirmed O.B. 10 N.J. 308 (1952); Pignatore v. Public Service Coordinated Transport, 26 N.J. Super. 234 (App. Div. 1953); Maccia v. Tynes, 39 N.J. Super. 1 (App. Div. 1956).
With the exception of the Pignatore and Maccia cases, supra, the above cases provide substantial authority for the *336 rule that it is proper to charge in such a case that the driver should exercise "great care" or "a high degree of care" and should select an opportune or safe time to make the turn. The defendant, in arguing that the charge as given was error, relies substantially upon the discussion in the Pignatore and Maccia cases. He contends the portion of the charge given before the jury asked for further instructions was erroneous and that there was a compounding of the error when the court answered the request of the jury for additional instructions.
In Pignatore, supra, the principal ground of appeal was the refusal by the trial judge to charge the jury, as requested, that a person making a left turn in the face of oncoming traffic is under a duty to exercise a "high degree of care and seek an opportune and safe time to do so." In determining that the denial of this instruction was reversible error, the court stated:
"While we decline to state that a trial judge must, ex necessitate, in response to such a request to charge use the words `great care,' or `a high degree of care,' yet he ought to point out to the jury that the operation of a motor vehicle to the left in front of or through the course of oncoming vehicles is an undertaking naturally accompanied by extraordinary hazards and precarious dangers, and accordingly the law exacts of a driver engaged in such an activity that degree of reasonable care which is proportionate and commensurate with the relatively increased likelihood of consequent danger. Vide, New Jersey Fidelity & Plate Glass Ins. Co. v. Lehigh Valley Railroad Co., 92 N.J.L. 467 (E. & A. 1918).
True, the trial judge in the present case, in defining negligence spoke of it as the failure to exercise `that degree of care, caution and vigilance that the circumstances justly demand,' but obviously that language was not sufficiently explicit to transport to the jury the legal principle to which the requests specifically related.
The author of this opinion has always gravely doubted the wisdom and feasibility of obliging trial judges in cases implicating the operation of motor vehicles to create by means of such terminology as `slight care,' `reasonable care,' `great care,' and `a high degree of care' seemingly different standards of care discriminatively applicable to particular movements of the vehicle. `Reasonable care,' if its fluctuation and versatility in degree according to the circumstances of the case are explained to the jury, is, I think, a satisfactory and efficient standard of care to be generally applied in such cases."
*337 It is clear that the charge as originally given in the instant case is not to be condemned by the result in the Pignatore case. It first set forth the duty of reasonable care. It then stated the special application of the rule in left-turn situations in the terminology used in most of the prior decisions.
In Maccia, supra, the plaintiff was making a left turn into a side street when struck by the defendant's car approaching from the opposite direction. The questions raised on the appeal concerning the charge were not before the trial court since no objection was raised. On appeal, this portion of the charge was attacked:
"`Now ordinarily all a plaintiff has to do is use reasonable care. In situations of this kind, turning left against oncoming traffic, one must seek an opportune time and use great care in the process.'" (Italics added)
The opinion considered the question whether the charge constituted plain error, within R.R. 1:5-3(c). (39 N.J. Super. at page 9). In an exhaustive discussion of the entire subject, the court concluded that the mere fact that the case involved a left turn situation did not require a departure from the usual instruction as to the standard of reasonable care. It was stated that whether or not the court should instruct the jury as to the need for any paricular kind of precaution depended upon the facts of the particular case. For example, "* * * where a left turn is made in front of or through the course of oncoming vehicles it may be most appropriate for the court in its charge to instruct the jury in particular as to the caution required in making such a turn." (39 N.J. Super. at page 8). The charge as given in the particular case was held not to amount to plain error.
We continue to adhere to the views expressed in the Pignatore and Maccia cases that the trial judge ought generally to stress with the jury in cases of this kind that there is only one basic standard of care in the operation of a motor vehicle  that of reasonable care under the circumstances  and that the particular facts in a given left-hand or U-turn situation should control the nature and extent of the additional *338 admonition concerning the special precautions required in the particularly hazardous circumstances involved. We do not consider that the charge in the present case, prior to the giving of the additional instructions, violated the basic requirements of the older cases cited above.
But we are of the view that the court's response to the question from the jury involved a critical departure from the basic rule, particularly in the light of the Pignatore and Maccia cases. By its inquiry the jury indicated that it did not understand whether it was to apply a rule of "great care" or a rule of "reasonable care." Thus it became essential that the court inform them, in accordance not only with the cited cases but also the rationale of the older ones, that there is only one basic standard of care  reasonable care under the circumstances  and that a driver about to make a left-hand turn across oncoming traffic, or a U-turn is undertaking an extraordinary traffic hazard and in doing so is expected by the law, as a reasonably prudent person, to seek an opportune or safe time to do so. It was not fatal, as we have already observed, that the court used the terminology "great care," but there was error in that it failed to relate the special degree of precaution required in the particular exigency to the general standard of reasonable care basically applicable to the conduct of the defendant all through the entire episode. "Reasonable care" was not even mentioned in the supplemental instruction. Indeed, from the supplementary charge, the jury may well have understood that there was a special duty of great care because the plaintiffs were invited guests, rather than because of the hazards of the left-hand U-turn. We conclude that the jury was left with an unclear and mistaken impression of the lawful standard of defendant's duty of care as a result of the supplementary charge, and this error will require a reversal of the judgment and a new trial.
Defendant claims that it was error to charge the violation of certain provisions of the Traffic Act, which he argues factually were inapplicable. Specifically, the court charged that the violation of R.S. 39:4-125, relating to turning a *339 vehicle on a highway at a point near a crest of the road, where there is no expressed prohibition of a U-turn; N.J.S.A. 39:4-126, which in substance states that the operator of a vehicle shall give an appropriate signal before turning; and R.S. 39:4-127, that no vehicle shall turn on a street if to do so it interferes with other vehicles, could be considered with all other facts in determining the question of negligence. In this connection, defendant objected to the failure of the court to tell the jury "They must first find there was a violation of the Act." The court then promptly complied with the request. We do not imply any approval of the objection or the action of the court, but defendant can have no complaint in view of the compliance by the court with his objection.
It is argued that the trial judge committed reversible error in excluding the statement made by the co-defendant Donnelly to the East Orange police on the morning after the accident. Cyphers' theory in arguing that it be admitted is that it is an admission of a party opponent and thus an exception to the hearsay rule. The principle upon which this exception is founded is that since the admission is generally inconsistent with the position taken by the same party in his pleadings or testimony, its testimonial trust-worthiness is unchallenged. What a person says should be taken as evidence against himself. Schloss v. Trounstine, 135 N.J.L. 11, 16 (Sup. Ct. 1946); 4 Wigmore, Evidence (3d ed. 1940), § 1048, p. 3.
"`The Hearsay Rule is satisfied' since the party `now as opponent has the full opportunity to put himself on the stand and explain his former assertion.'" McCormick, Evidence (1954), § 239, p. 503.
However, in the instant case Donnelly filed no pleadings and did not testify. In addition, the record shows that Cyphers had taken a default judgment against his co-defendant Donnelly. There was therefore no contest at the trial between Cyphers and Donnelly in respect to which the admission was relevant. The effort to have the statement admitted was for the apparent purpose of relieving Cyphers *340 of liability to plaintiffs on the basis that the statement would tend to indicate Donnelly was the sole cause of the accident. We do not pass upon the question whether in these circumstances the defendant was entitled to have the statement admitted. If there was error, it was not prejudicial. Everything contained in the statement was borne out independently by other proofs in the case  that Donnelly was completely oblivious to his being chased by police and to how fast he was driving his car along Central Avenue. The statement makes no mention of his passing through the red traffic lights, although the proof is conclusive of these facts.
The defendant also argues, and we believe properly, that the trial judge committed error in withdrawing the defense of contributory negligence of Mrs. Ambrose from the jury's consideration. Objection was raised to that portion of the charge where the trial judge instructed the jury that "there is no evidence that would imply that the Ambroses contributed in any respect to the happening of the accident."
The testimony of Mrs. Ambrose as to this issue is as follows:
"Q. Did you pay any particular attention to Mr. Cyphers as he started the engine of the car? A. No. I didn't.
Q. What were you doing? A. I was in conversation with my husband.
Q. Do you recall the incident when Mr. Cyphers started to move the car from this parked position? A. Just as he started to move I glanced over my right shoulder and back toward Harrison Street. At the intersection I saw headlights of this car approaching.
Q. You were sitting half facing your husband, so that by looking back out of the window you could see the car? A. Yes, it was very easy. It was because I was half turned this way. It was an involuntary thing because I saw headlights.
Q. Where were the headlights? A. Midway through the intersection of Harrison Street and Central Avenue.
Q. In which direction? A. To the west.
Q. How far was it from where the Cyphers car was parked east to Harrison Street? A. Oh, about 225 to 250 feet.
Q. In that glance that you took back you saw the lights of this car crossing Harrison Street coming west. Is that right? A. Yes.
Q. Did you do or say anything that instant? A. No, I didn't. I returned to the conversation with my husband."
*341 Additionally, Mrs. Ambrose knew that Cyphers was taking her and her husband to their home which was in the opposite direction from which the car was parked, and that it would be necessary for Cyphers to move into the traffic pattern on Central Avenue because of parked vehicles in front of him, although she did not necessarily anticipate a left U-turn across Central Avenue.
The rule is well settled that a passenger in an automobile is under a duty to exercise such a degree of care for his own safety as the exigencies of the situation reasonably require. Tobish v. Cohen, 110 N.J.L. 296 (E. & A. 1933); Wassmer v. Public Service Electric & Gas Co., 122 N.J.L. 367, 375 (E. & A. 1939); Falicki v. Camden County Beverage Co., 131 N.J.L. 590, 595 (E. & A. 1944); Kaufman v. Pennsylvania Railroad Co., 2 N.J. 318 (1949); Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 176 (1955); Sotak v. Pennsylvania Railroad Co., 13 N.J. Super. 130, 137 (App. Div. 1951), reversed on other grounds sub nom. Jelinek v. Sotak, 9 N.J. 19 (1952); Petrone v. Margolis, 20 N.J. Super. 180, 189 (App. Div. 1952); Bowman v. Central R. Co. of N.J., 27 N.J. Super. 370, 375 (App. Div. 1953); King v. Jones, 47 N.J. Super. 279 (App. Div. 1957).
Having due regard to the admonition of Judge Jayne in Sotak, supra (13 N.J. Super. at page 137), that
"The reasonably prudent passenger does not ordinarily exercise the vigilant circumspection of the conditions on the highway necessarily required of a driver. * * *"
and that
"* * * it is difficult to conceive of any field planted with a greater variety of posterior ideas and inferences more appropriately to be submitted to a jury composed of fairminded men and women than that in which the prudence of a passenger in a period of known or unanticipated emergency is to be admeasured."
it is our opinion that the evidence required the submission of the issue of contributory negligence of Mrs. Ambrose for *342 the jury's consideration. From the foregoing testimony it was for the jury to decide whether Mrs. Ambrose had reason to recognize the impending danger and, if so, whether she exercised due care for her safety in not giving warning of the approaching vehicle to the operator of the car in which she was a passenger.
Accordingly, the judgment is reversed and remanded for a new trial.