PAUL AMBROSE AND ISABEL AMBROSE, PLAINTIFFS-APPELLANTS, v. LEROY CYPHERS, DEFENDANT-RESPONDENT, AND GEORGE DONNELLY, DEFENDANT.

Argued December 15, 1958—Decided February 16, 1959.

140

*Mr. John A. Gleeson* argued the cause for appellants (*Mr. Fremont D. Donley* and *Messrs. Mead, Gleeson, Hansen & Pantages,* attorneys; *Mr. John A. Gleeson,* of counsel).

*Mr. Abraham I. Harkavy* argued the cause for respondent (*Messrs. Harkavy and Lieb,* attorneys).

The opinion of the court was delivered by

WEINTRAUB, C. J.  Mr. and Mrs. Ambrose recovered judgments for personal injuries (including loss *per quod* suffered by the husband) against both defendants. Plaintiffs were passengers in Cyphers' car when Cyphers, facing west, left a parked position at the curb to execute a U-turn and was struck by Donnelly who was proceeding westerly. Donnelly did not defend. His negligence was clear. The actual contest was between plaintiffs and Cyphers. On Cyphers' appeal, the Appellate Division reversed, finding error (1) in a supplemental charge with respect to the duty of a driver making a U-turn, and (2) in taking from the jury the question of contributory negligence of Mrs. Ambrose.

*Ambrose v. Cyphers,* 50 *N. J. Super.* 329 (1958). We granted plaintiffs' petition for certification. 28 *N. J.* 33 (1958).

## I.

### A.

The trial judge several times charged negligence in the conventional terms of the failure to exercise the care of a reasonably prudent man under the circumstances, and in fact closed his instructions by reading defendant's request to the same effect. However, with specific reference to a U-turn, he charged that if the jury found that Cyphers was making such turn (actually a conceded fact), then "it was the duty of the defendant Cyphers to exercise great care and to seek an opportune time to make such a left turn or U turn." Cyphers objected in these words:

"It is not a correct statement of the law. That was the statement about great care. The cases held that the care must be commensurate with the circumstances even if, as I understand the case, a greater degree of care than ordinary care must be used."

Defendant thus protested against the use of the term "great care," although it is not clear (a) whether he meant that the court should have said that "a greater degree of care than ordinary care" was required, or (b) whether he meant that the court should have charged only that the care required is that "commensurate with the circumstances," thus leaving it to the jury to decide whether such care in the circumstances should be greater than ordinary care.

The Appellate Division found no error in the main charge, but did find error in the supplemental instructions, as to which the record reads:

"THE COURT: Members of the Jury:

You have sent me a note which reads as follows: 'Is great care or reasonable care a consideration in this matter?'

Yes, it is. You must remember that they were invited guests in the car of the defendant Cyphers and I said to you that if you

find from the evidence that prior to the accident the automobile of the defendant Cyphers was standing in a parked position at the north curb of Central Avenue facing in a westerly direction and it was his intention to start from that position and proceed to make a left U turn to go east on Central Avenue it was the duty of the defendant Cyphers to exercise great care and to seek an opportune time to make such left turn, and that if he failed to exercise such great care then he violated the duty that the law placed upon him with respect to any invited guest, and this constitutes negligence on the part of the defendant Cyphers."

Cyphers objected to the supplemental charge. The objection, not being particularized, must be assumed to be the same one advanced to the main charge. The Appellate Division found error, not because it was improper to require "great care," but rather because the supplemental charge failed to state:

"that there is only one basic standard of care—reasonable care under the circumstances—and that a driver about to make a left-hand turn across oncoming traffic, or a U-turn is undertaking an extraordinary traffic hazard and in doing so is expected by the law, as a reasonably prudent person, to seek an opportune or safe time to do so. It was not fatal, as we have already observed, that the court used the terminology 'great care,' but there was error in that it failed to relate the special degree of precaution required in the particular exigency to the general standard of reasonable care basically applicable to the conduct of the defendant all through the entire episode. 'Reasonable care' was not even mentioned in the supplemental instruction." (50 *N. J. Super.*, at *page* 338.)

We observe in passing that the basis for reversal was not the objection advanced by defendant.

Parenthetically, we note that the Appellate Division added that "Indeed, from the supplementary charge, the jury may well have understood that there was a special duty of great care because the plaintiffs were invited guests, rather than because of the hazards of the left-hand U-turn." (50 *N. J. Super.*, at *page* 338). It is not clear that it would matter if that observation were correct. In any event, we are satisfied the jury must have understood that the reference was to the U-turn. The trial judge doubtless referred to plaintiffs' status because counsel for defendant had con-

tended that plaintiffs were merely licensees but failed to raise a factual question on that issue. Hence the court deemed it advisable to remind the jury that plaintiffs were invitees.

B.

■ The standard of care is the conduct of the reasonable man of ordinary prudence under the circumstances. That care is sometimes called "reasonable care," a short-hand expression for the fuller statement, to wit, the care which a reasonable man would exercise. Perhaps some of the linguistic difficulty arises from use of the short-hand expression, for it tends to suggest that "great care" is necessarily different from "reasonable care," whereas in a given set of facts "reasonable care" may require "great care."

The standard of care of the reasonable man necessarily imports varying *amounts* of care in relation to the variable element of risk of harm. The concept "connotes such degree of care as is commensurate with the risk of harm  *  *  *." *Niles v. Phillips Express Co.,* 118 *N. J. L.* 455, 459 (*E. & A.* 1937). The greater the risk, the greater is the care required —the reasonable man would so behave. We should differentiate this proposition from the much-criticized concept of degrees or kinds of negligence, *i. e.,* slight, ordinary, and gross, and the companion concepts of different *standards* of care. 2 *Harper and James, The Law of Torts* (1956), § 16.13, *p.* 945; *Prosser, Torts* (2 *ed.* 1955), § 33, *p.* 147. So, for example, while pointing out that the weight of authority rejects the idea of degrees or kinds of negligence, Prosser states that the single standard, the behavior of the reasonable man, will require varying *amounts* of care:

"The amount of care demanded by the standard of reasonable conduct must be in proportion to the apparent risk. As the danger becomes greater, the actor is required to exercise caution commensurate with it. Those who deal with instrumentalities that are known to be dangerous, such as electricity, gas, explosives, or elevators, must exercise *a great amount of care* because the risk is great." (*Ibid.*) (*Emphasis added.*)

So also in *Salmond, Torts* (11*th ed.* 1953), § 149, *p.* 511, appears : ·

"The law of torts　*　*　*　does not recognize different standards of care or different degrees of negligence in different classes of cases. The sole standard is the care that would be shown in the circumstances by a reasonably careful man, and the sole form of negligence is a failure to use this amount of care. It is true, indeed, that this amount will be different in different cases, for a reasonable man will not show the same anxious care when handling an umbrella as when handling a sword.　*　*　*"

## C.

In the usual case, the jury determines both the *quantum* of hazard and the *quantum* of care. As Prosser states it (*supra*, § 33, *p.* 149) :

"The prevailing view is that there are no 'degrees' of care or negligence, as a matter of law; there are only different amounts of care as a matter of fact.　*　*　*"

But where human experience uniformly suggests the amount of care a reasonable man should exercise in a given set of circumstances, the courts may properly fix the amount of required care as a matter of law, thus taking from the jury the factual inquiry ordinarily left with it as to the amount of hazard and care. Thus in 2 *Restatement of Torts* (1934), § 285, we find :

"The standard of conduct of a reasonable man
(a) may be established by a legislative enactment or a judicial decision, or
(b) may be applied to the facts of the case by the trial judge or the jury, if there be no such legislative enactment or judicial de-· cision."

In comment (d) it is pointed out that "Certain situations, or combination of situations, recur with such frequency that it is possible to find a fairly definite expression of judicial opinion as to the manner in which persons who find themselves therein should conduct themselves"; and "To the extent that the decision declares particular conduct to be up

to or below the socially required standard, it defines the conduct of the reasonable man and narrows the field in which the opinion of the trial judge or jury is operative. Occasionally a situation occurs so often that a series of appellate decisions deals with so much of the customary conduct of both parties as to afford a fairly exhaustive definition of the conduct of reasonable men in such situations."

So, for example, with respect to firearms and other dangerous agencies, our decisions fix as a matter of law the amount of care which the judicially ascertained hazard requires and thus take from the trier of the facts the role of determining the amount of risk and the amount of care. See *Davis v. Hellwig*, 21 *N. J.* 412 (1956) ; *Beck v. Monmouth Lumber Co.*, 137 *N. J. L.* 268 (*E. & A.* 1948). There is no room for a determination by the jury that a reasonable man would have another view of the matter.

██ And so as to the situation before us, a line of cases spanning some 30 years has found that a U-turn presents an unusual hazard, that overall the risk of harm inherent in that maneuver is high, and hence, as a rule of the road, a driver must exercise great care and seek an opportune moment. In chronological order, those cases are : *Day v. Beyer*, 5 *N. J. Misc.* 1069 (*Sup. Ct.* 1927) ; *Senofsky v. Frecker*, 10 *N. J. Misc.* 505 (*Sup. Ct.* 1932) ; *Felix v. Adelman*, 113 *N. J. L.* 445 (*E. & A.* 1934) ; *Anderson v. Cassidy*, 119 *N. J. L.* 331 (*Sup. Ct.* 1938) ; *Rynar v. Lincoln Transit Co., Inc.*, 129 *N. J. L.* 525 (*E. & A.* 1943) ; *Oliver v. Leonardo*, 135 *N. J. L.* 210 (*Sup. Ct.* 1947) ; *Wadell v. Public Service Coordinated Transport*, 3 *N. J. Super.* 132 (*App. Div.* 1949) ; *Politi v. Pennsylvania Greyhound Lines, Inc.*, 5 *N. J. Super.* 364 (*App. Div.* 1949) ; *The Motorlease Corporation v. Mulroony*, 13 *N. J. Super.* 556 (*App. Div.* 1951), affirmed 9 *N. J.* 82 (1952) ; *O'Neil v. Bilotta*, 18 *N. J. Super.* 82 (*App. Div.* 1952), affirmed on opinion below, 10 *N. J.* 308 (1952) ; *Pignatore v. Public Service Coordinated Transport*, 26 *N. J. Super.* 234 (*App. Div.* 1953) ; *Liberatori v. Yellow Cab Co. of Philadelphia*, 35 *N. J. Super.* 470 (*App. Div.* 1955).

In *Felix v. Adelman, supra* (113 *N. J. L.*, at *page* 448), the court agreed there is a duty to seek an opportune time, but made some inconclusive observations with respect to "great care" or "high degree of care." The opinion was not understood in later decisions to disapprove of a charge couched in such terms. In *Maccia v. Tynes*, 39 *N. J. Super.* 1 (*App. Div.* 1956), the court resumed the inquiry in *Felix*, agreed there is a duty to await an opportune time, but thought with respect to the measure of care that it is enough to refer to the standard of reasonable care (at *page* 9). It concluded, however, that the use of "great care" in that case was not plain error. The court observed (at *page* 8) that "The standard of reasonable care *under the circumstances* need not vary; however it is obvious that a greater danger or a greater responsibility will constitute a circumstance which, within the very terms of the standard, may call for a greater *quantum* of care." With this quotation, we agree. But as we have pointed out it is appropriate in principle for the court to adjudge upon the basis of experience that a U-turn involves such increased hazard that "reasonable care" (the care of a reasonable man) is "great" or "a high degree of" care, rather than such *quantum* of care as different juries may select upon their own view of the behavior of a reasonable man. We note in passing that the Legislature has also found a special hazard in U-turns and accordingly has provided in absolute terms that such turn shall not be made "at any place upon a highway where the view of such vehicle is obstructed within a distance of five hundred feet along the highway in either direction." *R. S.* 39:4-125. See also *R. S.* 39:4-126, as amended, which provides in part that no person shall "turn a vehicle from a direct course or move right or left upon a roadway * * * unless and until such movement can be made with safety."

█ The main charge properly spelled out the basic definition of negligence, and then, in specific reference to a U-turn, charged as a matter of law what a driver must do, in harmony with the cited cases. We find no departure in the supplemental charge. Defendant says the jury's question

indicated that it thought "reasonable care" was different from "great care." The question was not too clear, but if defendant's interpretation is accepted, still the court's instruction was correct. With respect to a U-turn, reasonable care (the care of a reasonable man) is great care, and hence we see no basis for exception. Presumably the shortcoming found by the Appellate Division would have been obviated if the trial judge had used a prefatory sentence to the effect that reasonable care (the care of a reasonable man)' under the circumstances of a U-turn means great care. If that is the point, we cannot see how the jury was misled or defendant prejudiced. *Gellatty v. Central R. of New Jersey,* 86 *N. J. L.* 416 (*Sup. Ct.* 1914).

Defendant says the instruction imposed absolute liability. It did not. It required the jury to determine whether defendant, charged as a reasonable man with the duty to exercise great care and to select an opportune moment, complied with that standard in moving when and in the manner in which he did. Defendant further says that whether a charge to that effect is proper depends upon the circumstances, *i. e.,* the amount and position of other traffic, the hour, *etc.* We do not agree. The charge is appropriate with respect to all U-turns, unless it can be said as a matter of law that there was no negligence or no possible connection between the turn and the collision; the circumstances to which defendant refers are to be considered by the jury in determining whether the time and manner of making the U-turn comported with the prescribed standard of behavior.

The problem is one of communication. If the existence of an abnormal amount of hazard may be adjudged as a matter of law, and we think it may, how can we best articulate the thought that the care must be stepped up to match the risk of danger? If the approach should be to describe the increased risk of harm and then to state simply that the care must be "commensurate" with the described risk, the first problem would be, how to describe the extra hazard in a meaningful way. Is it enough merely to state the hazard, that is, to say that U-turns are unusual maneuvers

involving surprise to others, or should a characterizing adjective, such as "great" be employed? We think the use of an appropriate adjective furnishes desirable guidance for the jury. The word "great" has long been held to be suitable. In the present context, it means "Considerable in degree; as, to use *great* caution; to be in *great* pain." *Webster's New International Dictionary* (*2d ed. unabridged* 1952).

■ If the intended criticism of the established instruction is that although the risk of harm may properly be described judicially as "great," yet the amount of care should be charged to be merely that which is "commensurate" with a "great" risk, that is to say, that "great" should not be used again in specific reference to the amount of care, then the criticism appears to have no literal justification. It would seem axiomatic that the amount of care "commensurate" with a "great" risk of harm is necessarily a "great" amount of care.

■ We are in agreement that the traditional charge cannot be said to be erroneous. We, however, are not wholly in accord with respect to whether the traditional charge best articulates the ultimate thought of a risk adjudged to be enlarged in degree and a correlatively stepped-up degree of caution. It may be that words such as "great" and "high" are not universally understood in their literal, relative signification. In an effort to achieve the desired perspective, in language agreeable to a majority of the court, we suggest that the charge be cast in terms substantially as set forth in the following outline:

1. The law imposes upon the driver of an automobile the duty to exercise the care that a reasonably prudent man would use under all the circumstances confronting him at a particular time. Failure to exercise such care constitutes negligence.

2. Obviously the risk of harm will vary with the circumstances. In some settings that risk is greater than in others, and, when this is so, a reasonably prudent man will exercise a greater amount of care in proportion to the increased risk.

3. With respect to a U-turn, involving as it does a movement across the path of other traffic, the risk of harm is ordinarily increased beyond that which exists when a car is proceeding along a direct course. Hence with respect to a U-turn, a reasonably prudent man would seek an opportune moment for the turn and would exercise an increased amount of care in proportion to the increased danger.

4. Accordingly the law provides that a person seeking to make a U-turn has the duty to seek an opportune moment and to exercise a degree of care in proportion to the increased danger involved in the turn. The question for the jury, therefore, is whether a reasonably prudent man, charged with that duty, would under the circumstances of the case have made the turn when and in the manner in which the driver here proceeded.

## II.

We think the trial court correctly held there was no evidence of contributory negligence. Donnelly was approaching Harrison Street (about 250 feet before the point of collision) at a tremendous speed under the circumstances—inferentially at 60 miles per hour or somewhat higher. Mrs. Ambrose and her husband were in the rear seat, he on her right and she half-turned toward him. They were conversing. In what she described as an involuntary glance to her right she saw headlights at Harrison Street. We assume she saw the Donnelly car. She was unaware of its speed or any danger. She did not know that Cyphers intended a U-turn. More importantly she was unaware that Cyphers had failed to observe the approaching car. We see no basis upon which a jury could find her contributorily negligent.

In general terms, a passenger is bound to exercise for his own safety the care of a reasonably prudent person under the circumstances. But with specific reference to the situation before us, a passenger "need not be on the alert or watch the road and may trust himself to the driver, until he has reason to believe that there is danger." *Prosser, Torts* (2d

*ed.* 1955), § 54, *p.* 301. In both *Falicki v. Camden County Beverage Co.,* 131 *N. J. L.* 590, 595 (*E. & A.* 1944) and *Tobish v. Cohen,* 110 *N. J. L.* 296, 301 (*E. & A.* 1933), the court, quoting approvingly from a standard text, said that in the absence of circumstances indicating the contrary, a passenger "need not anticipate that the driver, who had exclusive control and management of the vehicle, will enter a sphere of danger, omit to exercise proper care, to observe the approach of other vehicles, or fail to keep the speed of the vehicle within proper limits, or otherwise improperly increase the common risks of travel." A contrary approach would encourage disquieting interference and be more mischievous than serviceable. In *Melone v. Jersey Central Power & Light Co.,* 18 *N. J.* 163, 176 (1955), it was stated that there is a duty "to warn the driver * * * only of a known and appreciated peril if a reasonably prudent person would have given such warning under the same or similar circumstances, and the risk could thereby have been averted." The peril cannot be said to be "known and appreciated" unless the passenger (1) is aware of the hazard and (2) circumstances indicate to the passenger that the driver is unaware of it. *Lehman v. Anderson,* 27 *N. J. Super.* 444, 447 (*App. Div.* 1953), affirmed on opinion below, 14 *N. J.* 340 (1954). We find no evidence of either of these elements.

### III.

Defendant advances the further contention, not considered by the Appellate Division, that the verdicts should be set aside as against the weight of the evidence. *R. R.* 1:5–3(a). We see no basis for disturbing the jury's finding. There was evidence that the roar of Donnelly's car could be heard even before it came into view some 100 feet east of Harrison Street and that Cyphers started to pull away from the curb as Donnelly crossed Harrison Street about 250 feet away. Cyphers' view was unobstructed for some 350 or 400 feet. Central Avenue is 60 feet wide, and there are two west-bound lanes in addition to the lane in which Cyphers

was parked. Donnelly was travelling in the centermost westerly lane and the accident occurred in that lane. Cyphers said he first observed. Donnelly's car when it was directly upon him. The jury could reasonably have concluded that he failed to make observations consistent with the duty owed by one making a U-turn. In addition, the jury could have accredited admissions attributed to Cyphers within a matter of hours after the event that he had observed the headlights in his mirror, and that, had he been more careful, the accident would not have happened. We think the trial court properly denied the motion for a new trial.

The judgment of the Appellate Division is accordingly reversed and the judgments in the trial court are affirmed.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.