237 N.J. Super. 87 (1989)
566 A.2d 1185
KEITH LOMBARDO, PLAINTIFF,
v.
EDWARD M. HOAG, RONALD NIEMEYER, ADINA GREEN, NEILLEY'S LONG BAR, AND JOHN DOE BAR-LIQUOR STORE, FICTITIOUSLY NAMED, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided September 15, 1989.
*88 Charles X. Gormally for plaintiff (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys, Lance A. Posner, of counsel and on the brief).
David A. Hardaker for defendant Edward M. Hoag (Hoagland, Longo, Oropollo & Moran, attorneys).
Steven O. Mortenson for defendant Ronald Niemeyer (Mortenson & Pomeroy, attorneys).
Michael Palma, for defendant Neilley's Long Bar (Greenberg, Mellinger & Frese, attorneys).
MENZA, J.S.C.
Plaintiff presents an interesting argument. He contends that when a nonowner entrusts the operation of a motor vehicle to its owner, who he knows or should know is intoxicated, the nonowner should be liable to third persons for injuries caused by the owner's negligent operation of his vehicle.
The facts are as follows:
Defendant Hoag was the owner of a pick-up truck which he drove one day to the seashore with defendants Niemeyer and Green as his passengers. It was a day of drinking and carousing. At the end of the day, defendant Niemeyer decided to *89 drive the Hoag vehicle back home, because he felt that it was safer for him to drive, rather than for defendant Hoag to do so. The specific reason he gave for driving the Hoag vehicle was that defendant Hoag was "buzzed," and because Hoag "drives like an animal."
Upon arriving home, defendant Niemeyer left the vehicle and delivered the vehicle over to Hoag, who then proceeded to drive plaintiff Lombardo and defendant Green to their respective homes. He became involved in an accident almost immediately after he started to drive. Plaintiff Lombardo sustained serious injuries as a result of this accident, and this suit seeks compensation for those injuries.[1] His claim against Niemeyer is based upon negligent entrustment.
Defendant Niemeyer moves for summary judgment.[2] He contends that the concept of negligent entrustment is inapplicable to a situation where a chattel is entrusted to its rightful owner.
Plaintiff concedes that a novel issue has been presented. He argues, however, that Niemeyer had both a statutory and a common law duty to insure the safety of Hoag and plaintiff. His brief succinctly sets forth his position:
The determination of whether the defendant owes a duty to the plaintiff in this case is not a static or fixed concept susceptible of determination only by a searching analysis of out of state authority. Rather, it involves a question of fundamental fairness, an examination of the relationship of the parties involved, a determination of the nature of the risks and an analysis of whether there is a public interest in the solution to the problem presented. As such, the determination of duty must of necessity adjust to encompass the changing social relationships and exigencies of every day life.
There are no New Jersey cases, nor for that matter, any other cases outside of New Jersey which this court has found with a similar factual pattern.
Negligent entrustment is defined in the Restatement:

*90 It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others. [Restatement, Torts 2d, § 308 at 100 (1965)]
This court finds that defendant Niemeyer, although having been the driver of the Hoag vehicle for a period of time, was not in control of the vehicle at the time he turned it over to Hoag, at least not in the sense envisioned by the Restatement. The question, then, is whether the concept of negligent entrustment should be extended to encompass situations where the person who has temporary use of a vehicle returns the vehicle to its rightful owner, who he knows or should have known is intoxicated. The answer depends on whether a duty of care should be imposed on that person.
Traditionally, the law holds that a person has no duty to act for the protection of others.
The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.
Comment:
The result of this rule has been a series of older decisions to the effect that one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown.
Illustration:
1. A sees B, a blind man, about to step in front of an approaching automobile. A could prevent B from so doing by a word or touch without delaying his own progress. A does not do so, and B is run over and hurt. A is under no duty to prevent B from stepping into the street, and is not liable to B. [Restatement, supra, § 314 at 116-117]
Nor does the law impose a duty upon one person to control the conduct of another person.
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (there is a special relationship between the parties). [Restatement, supra, § 315 at 122]
In the absence of either one of the kinds of special relations described in this Section, the actor is not subject to liability if he fails, either intentionally or through inadvertence, to exercise his ability so to control the actions of third persons as to protect another from even the most serious harm. This is true although the actor realizes that he has the ability to control the conduct of a third person, and could do so with only the most trivial of efforts and without *91 any inconvenience to himself. Thus if the actor is riding in a third person's car merely as a guest, he is not subject to liability to another run over by the car even though he knows of the other's danger and knows that the driver is not aware of it, and knows that by a mere word, recalling the driver's attention to the road, he would give the driver an opportunity to stop the car before the other is run over. [Restatement, supra, comment b at 123]
There are exceptions to these rules: in cases where the parties have a special relationship, Restatement, supra, § 315; where one person has control of the other; where a person by his prior conduct has created a situation of peril to another; or where he has assured a duty of reasonable care for the protection of the other person. See Restatement, supra, § 314, comment a. None of the exceptions are applicable to this case.
The fact that Niemeyer drove the Hoag vehicle from the seashore did not thereby create a special relationship between the parties nor did it place Niemeyer in a position of control. Nor could it be considered as his having placed Hoag and plaintiff in a position of peril.
Although one could argue that Niemeyer's conduct constituted a gratuitous undertaking to care for Hoag and plaintiff, this court is of the opinion that Niemeyer's conduct was motivated by concern for his own safety and not the safety of his friends.
Plaintiff contends that Niemeyer had a statutory duty of care by virtue of the drunk-driving statute, N.J.S.A. 39:4-50, which imposes sanctions upon a person who permits another person to drive a vehicle when he knows that the other person is under the influence of intoxicating liquors.
This court disagrees. The cases which have interpreted the statute have dealth with factual patterns in which the driver is permitted to drive an automobile by the owner or by a person who has control of the automobile. See State v. Carlston, 40 N.J. Super. 559 (Law Div. 1956); State v. Skillman, 226 N.J. Super. 193 (App.Div. 1988).
In Skillman, the court, although not addressing the precise issue, appeared to take for granted that the statute was applied *92 only to persons who owned or controlled a vehicle. The court said:
Accordingly, we hold that before a person may be convicted of permitting another person to operate a motor vehicle under the influence of intoxicating liquor or drugs, or in violation of the statutory standard for blood alcohol level, the State must produce evidence from which the trier of fact may reasonably infer, beyond a reasonable doubt, that such owner or custodian knew or reasonably should have known, of the permittee's impaired condition to drive. [Id. at 199-200; emphasis supplied]
In Corpus Juris Secundum, the authors use this language:
Under some statutes it is an offense for any person to permit another who is under the influence of intoxicating liquor to operate a motor vehicle which is owned by the former or is in his custody or control. [Carlston, supra, 40 N.J. Super. at 561 (quoting 61 C.J.S., Motor Vehicles, § 625 at 715); citations omitted; emphasis supplied]
Plaintiff's primary contention is that Niemeyer had a common law duty of care. He argues that the public policy of this State regarding drunk drivers, along with a fundamental concept of fairness demands that, in this set of facts, plaintiffs have redress against defendant Niemeyer.
Public policy is a legitimate consideration in the determination of whether a duty of care exists towards another person. As Prosser puts it:
[Duty] is only an expression of the sum total of those considerations of policy which lead the law to say that the [particular] plaintiff is entitled to protection. [Prosser & Keeton, Law of Torts (5 ed. Keeton 1984), § 53 at ___]
There is no doubt that the clear public policy of this State is to prevent drunk driving. This has been expressed in both legislative enactments and judicial opinions  the latter through an expression of the concept of duty owed to third persons. The Supreme Court first expanded the duty of care in drunk driving cases over 20 years ago when it decided in the case of Rappaport v. Nichols, 31 N.J. 188 (1959), that when a tavern owner sells alcoholic beverages to a person who he knows or should know is intoxicated, the tavern owner would be liable to third persons who are injured by the conduct of the intoxicated person.
*93 In the landmark case of Kelly v. Gwinnell, 96 N.J. 538 (1984), the Supreme Court expanded the duty even further when it imposed liability upon a social host who served intoxicating liquors to a guest he knew was intoxicated. The Court's rationale was simply stated:
Unlike those cases in which the definition of desirable policy is the subject of intense controversy, here the imposition of a duty is both consistent with and supportive of a social goal  the reduction of drunk driving  that is practically unanimously accepted by society. [at 545]
And in a recent case, a Law Division judge expanded the duty once again to encompass sales by liquor stores. The court said:
Stopping one step short of attaching liability to a package store's sale to an obviously or apparently intoxicated adult would serve no purpose other than to frustrate public policy which compels this court to extend such liability. [Tilton v. Brombacher, 232 N.J.Super, 374, 377 (Law Div. 1989)]
Courts in other jurisdictions have similarly expanded the duty owed to third persons in cases involving drunk driving. In Price v. Halstead, 355 S.E.2d 380 (W. Va.Sup.Ct. 1987), the West Virginia Supreme Court of Appeals imposed liability upon a passenger in a vehicle operated by a drunk driver where the passenger had furnished marijuana and alcohol to the driver. The court premised its decision on section 876(b) of the Restatement, Torts 2d which states that a person is liable to third persons for the tortious conduct of another person when he gives substantial assistance or encouragement to the other person's conduct, knowing that the other person's conduct constitutes a breach of duty. The breach of duty, of course, being the operation of a vehicle while intoxicated.
In a California case, O'Toole v. Carlsbad Shell Serv. Station, 202 Cal. App.3d 151, 247 Cal. Rptr. 663 (App.Ct. 1988), the court held that a service station owner was liable to a third person when he knowingly furnished gasoline to an intoxicated driver who thereafter caused an accident which resulted in injuries to the third person. The court premised its decision on negligent entrustment of a chattel, finding that the sale of gasoline to the intoxicated driver was equivalent to the owner having given the keys of the car to him.
*94 But, the imposition of duty is not merely a matter of public policy. It is more than that. It is a bundle of considerations having its premise in concepts of fundamental fairness and morality. In Wytupeck v. Camden, 25 N.J. 450 (1957), the Supreme Court expressed it this way:
"Duty" is not an abstract conception; and the standard of conduct is not an absolute. Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm, such as is reasonably foreseeable.... Duty is largely grounded in the natural responsibilities of social living and human relations, such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct.
....
"Duty" is not a rigid formalism according to the standards of a simpler society, immune to the equally compelling needs of the present order; duty must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows; and accordingly the standard of conduct is care commensurate with the reasonably foreseeable danger, such as would be reasonable in the light of the recognizable risk, for negligence is essentially "a matter of risk * * * that is to say, of recognizable danger of injury." [at 461-462; citation omitted; emphasis supplied]
Duty then is an obligation grounded in the "natural responsibilities of social living and human relations, such as having the recognition of reasonable men." Ibid.
Ask a "reasonable man," a lay person, whether a duty should be imposed upon a person to act reasonably in order to insure that an intoxicated person does not drive an automobile, and the odds are that the lay person would respond that a duty should be imposed. But, ask a lawyer whether the duty should be imposed, and the odds are that the lawyer will respond that no such duty is owed. The difference in their thinking is that the lay person perceives law as a reflection of morality, and therefore, concludes that a breach of morality is a breach of the law. The lawyer, however, thinks of the law in a different fashion. He thinks in terms of categories, established by legislative enactments and court opinions. He separates the law from morality, thinking of the former in terms of rules made by a *95 political sovereignty, the breach of which result in sanctions, and the latter in terms of what society believes is right and just, the breach of which will result in considerations by a higher authority sometime in the very distant future.
An enlightened society should no longer excuse the immoral and outrageous conduct of a person who allows another to drown, simply because he doesn't wish to get his feet wet. Society demands more than that of its citizens. It demands that a person exercise a duty of care towards another person in order to insure that the other person remains free from harm, if he can do so without peril to himself. And it demands an atmosphere in which all persons will expect that others will conduct themselves in such a manner. Defendant Niemeyer had an obligation in the law to do what he could to see that Hoag did not drive his vehicle while intoxicated. And, it is of no particular moment whether we express that obligation in terms of duty, or in terms of proximate cause or foreseeable risk, or whether we premise it on some legal rule such as negligent entrustment, or assistance and encouragement, or negligently permitting improper persons to use certain chattels,[3] or entrustment of a chattel by a person known to be incompetent,[4] or anything else for that matter.
The bottom line is that if defendant Niemeyer knew or should have known that defendant Hoag was intoxicated and unable to drive, then he should have done whatever a reasonable person would have done under the circumstances to see that Hoag did not drive his vehicle. It was not difficult conduct that was expected of him, only reasonable conduct. He could have, for example, driven Hoag and plaintiff home first, and then driven the vehicle to his house, delivering it over to Hoag *96 the next day. He could have used his own automobile to drive Hoag and plaintiff home. He could have made a telephone call to a family member of Hoag's to assist. He could have attempted, at least, to persuade Hoag not to drive. He could have done any number of things expected of reasonable people, so as to insure the safety of Hoag and plaintiff. Instead, he drove to his house, arrived safely, and delivered the auto over to Hoag, without any consideration at all of the consequences of his conduct. This behavior, if true, is simply immoral and demands legal sanctions. Those of a higher authority take much too long.
It will be up to a jury to determine whether defendant Hoag was intoxicated and unable to drive, whether Niemeyer knew or should have known of this fact, and whether Niemeyer's conduct in delivering the vehicle over to Hoag was reasonable under the circumstances.
Defendant's motion for summary judgment is denied. Plaintiff's cross-motion for summary judgment is granted.
NOTES
[1] Defendant Hoag was issued a summons for driving while intoxicated. He was subsequently found not guilty.
[2] Plaintiff has a cross-motion for summary judgment.
[3] See Restatement, Torts 2d, supra, § 308 at 100 (permitting improper persons to use things or engage in activities).
[4] See Restatement, Torts 2d, supra, § 390 at 314 (chattel for use by persons known to be incompetent).