JAMES F. O'GORMAN & others[1] *vs.* ANTONIO RUBINACCIO & SONS, INC.

Suffolk. September 7, 1990. - December 5, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Alcoholic Liquors*, Motor vehicle. *Negligence*, Tavern, Motor vehicle, Intoxicated person, Duty to prevent harm. *Motor Vehicle*, Operating under the influence.

In an action asserting claims against the operator of a licensed bar for negligence, wrongful death, and loss of consortium and services, arising from an automobile accident caused by an intoxicated driver, summary judgment was properly entered for the defendant, where the defendant owed the public no duty to prevent the driver from harming travelers using the highway in circumstances where the defendant neither created nor contributed to the danger. [760-763]

CIVIL ACTION commenced in the Superior Court Department on July 15, 1988.

The case was heard by *Elbert Tuttle*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*George C. Deptula* (*Karin A. Gregory* with him) for the plaintiffs.

*John J. Lang* for the defendant.

GREANEY, J. The plaintiffs, James F. O'Gorman and the executors of the estate of Sylvia S. McKinney, commenced an action in the Superior Court against the defendant, Antonio Rubinaccio & Sons, Inc., asserting claims of negligence, wrongful death, and loss of consortium and services.

---

[1]Gerald A. Berlin and Bank of New England, N.A., executors of the estate of Sylvia S. McKinney.

The case raises the issue whether the defendant, a licensed bar, owed a duty to the general public to prevent an intoxicated person from driving his car. This issue arises under facts which indicate that the defendant had not served the intoxicated person any liquor but had taken his car keys, attempted to sober him up, and then, upon the person's request, returned the keys, allowing him to drive while still intoxicated. A judge in the Superior Court allowed the defendant's motion for summary judgment pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). The plaintiffs appealed and we transferred the case to this court on our own motion. We agree with the judge that the defendant has demonstrated that it is entitled to judgment as a matter of law, see *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Eng'rs, Inc.*, 396 Mass. 818, 822 (1986), and, consequently, we affirm the judgment.

In passing upon the defendant's motion for summary judgment, the judge properly assumed that all of the facts favorable to the plaintiffs were to be taken as true, and that the plaintiffs were to have the benefit of any favorable inferences. See *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983). Considered under this standard, the summary judgment record discloses the following.

On January 19, 1986, Grover Greenleaf entered the defendant's establishment, T.J.'s Lounge & Pizza. Greenleaf had arrived by car and was obviously drunk. One month before, Greenleaf had been thrown out of an athletic club because of obnoxious and drunken conduct. Greenleaf ordered an alcoholic drink from the bartender and, upon being refused, asked to see the defendant's owner, Antonio Rubinaccio (Rubinaccio). Rubinaccio knew Greenleaf personally, as Greenleaf had been to the bar once or twice a week during the preceding months. It is unclear whether Rubinaccio knew that Greenleaf had been ejected from the athletic club or whether he had seen Greenleaf drunk before January 19.

Rubinaccio convinced Greenleaf to stay at the bar and served him some food. He also took Greenleaf's car keys, telling him that he would return them when Greenleaf was ready. In taking this action, Rubinaccio was attempting to be "a good Samaritan trying to straighten [Greenleaf] up." A police officer was present in the parking lot during this time in order to investigate a hit and run accident. Although the officer was notified that there was an intoxicated person in the bar, the officer was never asked to enter the bar and never did enter the bar.

After a space of two hours Greenleaf, who was still drunk, wanted to leave. Rubinaccio offered him a ride, but Greenleaf refused it because he said he was only going a few miles. Greenleaf asked for his keys, and Rubinaccio returned them. Rubinaccio did not feel he had a right to keep Greenleaf's keys at this point, and noted that Greenleaf looked a lot better anyway.

T.J.'s Lounge & Pizza is located on a dangerous stretch of Route 2 in the town of Erving. At about 6 P.M., Greenleaf drove onto Route 2 in the fog and rain and lost control of his vehicle, crossing the center line and hitting another car head-on. The accident took place within minutes of his leaving T.J.'s Lounge & Pizza. The driver of the other car, Sylvia S. McKinney, was killed, and a passenger, James F. O'Gorman, was seriously injured. Greenleaf was also killed. At an autopsy Greenleaf's blood alcohol level was found to be .16, which is sixty per cent over the legal intoxication limit.

In order for the plaintiffs to prevail, it must appear that Rubinaccio had a duty of care to prevent Greenleaf from harming travelers who were using the highway. See *Dhimos* v. *Cormier*, 400 Mass. 504, 506 (1987); *Theriault* v. *Pierce*, 307 Mass. 532, 533 (1940). Whether he owed such a duty is a question of law. *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 156 (1983). We disagree with the plaintiffs' contention that the requisite duty should be found to exist in this case.

Several decisions have recognized a duty owed by a defendant to the driving public resulting from a defendant's act

of selling or serving alcoholic beverages to someone who the defendant knew, or reasonably should have known, was intoxicated or underage. See *McGuiggan v. New England Tel. & Tel. Co.*, 398 Mass. 152, 162 (1986) (social host); *Michnik-Zilberman* v. *Gordon's Liquor, Inc.*, 390 Mass. 6 (1983) (package store selling liquor to a minor); *Cimino* v. *Milford Keg, Inc.*, 385 Mass. 323 (1982) (tavern). See also G. L. c. 138, §§ 34, 69 (1988 ed.); *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 632-633 (1989). Because Rubinaccio furnished no alcohol to Greenleaf no liability can arise under these authorities.[2]

We reject the plaintiffs' contention that a duty should be imposed here because the circumstances of Rubinaccio's contact with Greenleaf somehow created a "special relationship" with the driving public. For this contention, the plaintiffs rely essentially on the discussion in *Irwin* v. *Ware*, 392 Mass. 745, 754-763 (1984). Reliance on the *Irwin* decision is mis-

---

[2]In several cases from other jurisdictions relied upon by the plaintiffs, liability was premised largely on the act of serving alcohol, which created the dangerous condition. See *Chastain* v. *Litton Syss., Inc.*, 694 F.2d 957 (4th Cir. 1982), cert. denied, 462 U.S. 1106 (1983); *Brockett* v. *Kitchen Boyd Motor Co.*, 264 Cal. App. 2d 69 (1968); *Gariup Constr. Co.* v. *Foster*, 519 N.E.2d 1224 (Ind. 1988); *Millross* v. *Plum Hollow Golf Club*, 429 Mich. 178 (1987). These cases obviously are not on point.

Also not on point is the plaintiffs' argument that certain regulations of the Alcoholic Beverages Control Commission create a basis of liability. The regulations state that no holder of a liquor license "shall permit any disorder, disturbance or illegality of any kind to take place in or on the licensed premises." 204 Code Mass. Regs. § 2.05 (2) (1986). This regulation describes a preexisting common law duty which licensees owe to their patrons or guests. See *Kane* v. *Fields Corner Grille, Inc.*, 341 Mass. 640, 641-642 (1961). A bar owner, for example, has the duty to protect persons on or about the premises from the dangerous propensities of its patrons, served or unserved. When the bar has served a potentially dangerous patron, the duty may extend beyond the premises. When the bar has not served the patron, however, the duty is based merely on a duty to keep the premises safe, and the duty applies only on or about the premises. *Carey* v. *New Yorker of Worcester*, 355 Mass. 450, 452 (1969). See *Gustafson* v. *Mathews*, 109 Ill. App. 3d 884 (1982) (bar owner had no duty to prevent intoxicated patron from driving away with his five children in the car); *Locklear* v. *Stinson*, 161 Mich. App. 713 (1987) (bar owner not liable when one patron was killed by another patron off the premises).

placed. That decision, and others like it, see *Ribeiro* v. *Granby*, 395 Mass. 608 (1985); *Nickerson* v. *Commonwealth*, 397 Mass. 476 (1986); *Appleton* v. *Hudson*, 397 Mass. 812 (1986); *A.L.* v. *Commonwealth*, 402 Mass. 234 (1988), concern the alleged failure of public employees to perform tasks required of them by the terms of their employment, with the result that indirect harm is caused to an individual. See also the most recent discussion of this subject in *Onofrio* v. *Department of Mental Health*, ante 605, 608-610 (1990). Liability in *Irwin* was predicated on the public employees' awareness of the motorist's intoxicated condition, in circumstances which posed an immediate and foreseeable threat of harm to a third person, and a complete failure by the employees to do their jobs. This rule obviously has no application to this case.

Rubinaccio had nothing to do with Greenleaf's intoxication, assumed no duty with respect to Greenleaf, and had no right to control Greenleaf's conduct or the use of his motor vehicle.[3] Rubinaccio, therefore, owed no duty to intervene on behalf of anyone at risk because of Greenleaf's actions, because he did not create or contribute to the danger. See *Black* v. *New York, N.H. & H.R.R.*, 193 Mass. 448, 450 (1907); J.R. Nolan & L.J. Sartorio, Tort Law § 206, at 342 (2d ed. 1989). See also *Yakubowicz* v. *Paramount Pictures Corp.*, *supra* at 632-633. See *Sports, Inc.* v. *Gilbert*, 431 N.E.2d 534 (Ind. Ct. App. 1982) (racetrack owner had no duty to prevent an intoxicated patron from driving when it had no right to do so); *Bahm* v. *Dormanen*, 168 Mont. 408 (1975) (defendant had neither right nor duty to prevent drunken friend from driving a truck which belonged to third party); *Congini* v. *Portersville Valve Co.*, 504 Pa. 157 (1983)

---

[3]The mere furnishing of some help to Greenleaf would not support a conclusion that Rubinaccio had assumed a duty to the plaintiffs. Nothing that Rubinaccio did increased the risk of harm to the plaintiffs. In fact, everything Rubinaccio did was aimed at preventing Greenleaf from going back on the road and, if anything, served to diminish the risk of harm. For these reasons, the principles stated in Restatement (Second) of Torts §§ 323, 324A, and 876 (1975) are of no help to the plaintiffs.

(employer had no duty to withhold drunken employee's keys at company Christmas party because employer had no right to control employee's car). See also *Smith* v. *Shaffer*, 395 N.W.2d 853 (Iowa 1986) (bar owners had no duty to telephone police when intoxicated minors were on their premises in violation of curfew).[4]

This case was a proper one for entry of summary judgment.

*Judgment affirmed.*

---

[4]By contrast, the decisions cited by the plaintiffs either involve a defendant who was required by his job to take action to restrain an intoxicated driver or a defendant who did something to enable an intoxicated person to drive. See *Doggett* v. *United States*, 875 F.2d 684 (9th Cir. 1989) (security guard may be liable for allowing a drunken serviceman to drive); *Leppke* v. *Segura*, 632 P.2d 1057 (Colo. Ct. App. 1981) (defendant "jump started" intoxicated person's car); *Ransom* v. *Garden City*, 743 P.2d 70, 76 (Idaho 1987) (police could be liable for violating a duty not to permit use of a vehicle when such use could create unreasonable risk of harm to others); *Fudge* v. *Kansas City*, 239 Kan. 369 (1986) (police officer held liable for not taking an intoxicated person into custody to prevent him from driving); *Otis Eng'g Corp.* v. *Clark*, 668 S.W.2d 307 (Tex. 1983) (employer, which had the ability to control employee at work, may be liable for sending intoxicated employee home in his car).

The plaintiffs cite one case from the Superior Court of New Jersey in which the defendant's motion for summary judgment was denied where the defendant nonowner returned keys to the intoxicated owner after driving that car to his own house. *Lombardo* v. *Hoag*, 237 N.J. Super. 87 (1989). This decision was not examined by a New Jersey appellate court and does not appear to represent the current law anywhere. See *Lather* v. *Berg*, 519 N.E.2d 755, 764-766 (Ind. Ct. App. 1988) (nonowner may not be liable for returning keys to intoxicated owner).