269 N.J. Super. 36 (1993)
634 A.2d 550
KEITH LOMBARDO, PLAINTIFF-APPELLANT,
v.
EDWARD M. HOAG AND RONALD NIEMEYER, DEFENDANTS-RESPONDENTS, AND ADINA GREEN, NEILLEY'S LONG BAR AND JOHN DOE BAR-LIQUOR STORE, FICTITIOUSLY NAMED, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1993.
Decided November 30, 1993.
*39 Before Judges PETRELLA, CONLEY and VILLANUEVA.
Charles X. Gormally argued the cause for appellant (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Mr. Gormally and Lance A. Posner of counsel; Mr. Gormally and Steven L. Fox, on the brief).
Robert S. Helwig argued the cause for respondent Edward M. Hoag (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Michael F. Dolan, on the brief).
Stephen O. Mortenson argued the cause for respondent Ronald Niemeyer (Mortenson and Pomeroy, attorneys; Mr. Mortenson, on the brief).
No other parties participated in this appeal.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Plaintiff Keith Lombardo appeals from a judgment entered after a jury trial that fixed his damages at $200,000, and found him 15% negligent, Adina Green 5% negligent, and defendant Edward M. Hoag 80% negligent. The trial judge molded the verdict and entered judgment for Lombardo in the amount of $160,000, plus prejudgment interest of $56,834. In addition to finding both Lombardo and Green[1] negligent, the jury found no negligence on the part of defendant Ronald Niemeyer.
The allegations of Lombardo's complaint against Niemeyer were essentially of negligent entrustment by returning to Hoag, the owner of the vehicle involved herein, the keys and control of his pickup truck. On pretrial motion by Niemeyer and Lombardo's cross-motion for summary judgment, the Law Division granted *40 Lombardo's cross-motion and concluded that there was a legal and moral basis to establish a "reasonable conduct" standard. Although that issue is not directly before us (leave to appeal the interlocutory order was denied), we elicited discussion of it at oral argument because the implications of that ruling bear on the issues presented to the jury. This is so particularly because the trial judge[2] expanded on the "reasonable conduct" standard and imposed it on all passengers in the vehicle, including Lombardo.
At the time of the 1986 accident, Lombardo was eighteen years of age, a resident of Kenilworth, enjoyed sports and worked part-time at U.P.S. He attended Union County College and intended to pursue a career in law enforcement.
At about 9:00 p.m. on May 31, 1986, Lombardo met Hoag, Niemeyer, and Anthony Rehm, as well as other individuals, at Hoag's house for a party. Between 9:00 p.m. and 11:00 p.m., Lombardo consumed approximately four beers and observed Hoag drinking "approximately six to eight beers."
The group decided around 11:00 p.m.[3] to drive down to the jetty at the beach in Point Pleasant, where they intended to drink and socialize. Niemeyer drove[4] the group of friends to Point Pleasant in Hoag's Isuzu pickup truck after picking up Adina Green (Hoag's then-girlfriend) in Kenilworth. Lombardo characterized Hoag's appearance upon leaving his house as marked by glazed eyes, boisterous behavior, and disheveled clothing.
During the trip south on the Garden State Parkway, Lombardo, who was sitting in the passenger seat, observed Hoag and the others drinking beer and throwing bottles from the truck bed. *41 Rehm testified that Hoag drank approximately three beers in the course of the ride. Hoag, however, did not recall drinking during the trip.
Between 12:00 and 12:30 a.m., the group arrived at Point Pleasant. Police officers there stopped the truck because Hoag, Green, and Rehm were riding in the pickup's bed. The officers emptied the bottles of beer that they discovered and told the group that they were not permitted to ride in the truck bed.[5] After the police left, Niemeyer drove Hoag and Green to purchase more beer, leaving Lombardo and Rehm behind.
At approximately 1:00 a.m., Lombardo and Rehm walked to the jetty and rejoined Hoag, Niemeyer, and Green, who had a case of beer and were already there. The group drank and socialized with other persons. Niemeyer, Rehm, and Lombardo then drove to a convenience store to purchase something to eat and returned to the jetty area about a half hour later.
Lombardo said that he saw Hoag drink about three more beers. According to Lombardo, Niemeyer did not appear impaired, but Hoag appeared "very intoxicated," as his eyes were glazed and bloodshot and he was loud and boisterous. Based on his observations of Hoag, Lombardo believed that Hoag was "unfit to drive." Lombardo, however, did not express this belief to anyone else: "As far as I know, I'm the only one who had that opinion...." Rehm testified that he believed Hoag was "slightly intoxicated." Niemeyer, who estimated that he drank six to eight beers that evening, did not know for certain how much beer Hoag may have had at the beach, but said it might have been one or two beers. Hoag admitted having five or six beers while on the jetty, and a total of about ten beers over the course of that night.
At about 2:30 a.m., the group decided to return to the convenience store before driving north on the parkway. Niemeyer drove while Hoag and his girlfriend Green rode in the front. *42 Lombardo and Rehm sat in the pickup bed. Hoag testified that he allowed Niemeyer to drive because he "didn't feel like driving," and not because he thought he was intoxicated  although not sure, Hoag did not believe he was drunk. No one told him that he was unfit to drive.
According to Niemeyer's deposition, which was read at trial, he drove because he did not trust Hoag's driving as he was very careless and drove "like an animal."[6] Niemeyer further testified that he drove because Hoag was often a reckless and careless driver, and because Niemeyer always enjoyed driving. Niemeyer described Hoag as "slightly buzzed," meaning that "he was feeling a little bit happy," but not intoxicated. Hoag did not do anything to lead Niemeyer to conclude that he (Hoag) was under the influence of alcohol. In fact, Niemeyer stated at trial that he felt Hoag was "fine," only a little tired, and fit to drive. Niemeyer did not think that Hoag was intoxicated on the way back from Point Pleasant. He had seen Hoag drink on previous occasions and felt that his friend was capable of driving on the night of the accident.
Rehm only remembered Hoag's eyes being bloodshot. He explained that he would not have thought that Hoag was unfit to drive if he had seen Hoag for the first time that evening just as Hoag was about to take over the wheel. Green testified that Hoag did nothing that would lead her to believe that he was intoxicated.
Because Niemeyer's house was the closest to the parkway, he drove himself home first. Hoag would not have let Niemeyer keep his new truck overnight. Upon arriving at his residence in Garwood, Niemeyer exited the truck and Hoag, the owner of the truck, "took over the drive home." Although Green claimed that Hoag simply slid over to the driver's seat, Rehm, who was sitting up in the truck bed, remembered Hoag getting out of the vehicle and walking around to the driver's side. Hoag testified that they *43 all said goodnight to Niemeyer, and that Niemeyer said goodnight and that he would talk to them the next day. Rehm heard words spoken, but could not recall what was said. According to Hoag, Lombardo asked if he could drive the new truck, but Hoag refused to let him.
At trial, Niemeyer testified that he believed that Hoag was fit to drive, despite being "slightly buzzed"; he testified that out of common courtesy he asked Hoag if he was all right to drive to make sure that he was not too tired because it was late.[7] Hoag said that he was all right.
Lombardo testified that he was asleep in the back of the truck during the trip back, with his head pointing towards the cab, and woke up only at Niemeyer's house when he heard a car door slam. Lombardo said that he did not hear any conversation and never asked to take over the driving because it happened quickly and also because he did not have his driver's license on him since he lost his wallet. Rehm also testified that he remained in the truck bed upon arrival at Niemeyer's house.
Some three to five minutes later, in Cranford, and approximately one-quarter of a mile from Niemeyer's house, the accident occurred, with Hoag driving. Lombardo recalls an abrupt right turn accompanied by screeching tires, and then a sudden and forceful impact. Hoag drove the pickup truck into a parked car, pushing that car over the curb and into another vehicle. Rehm described the impact as "pretty heavy." Lombardo's head hit the back of the pickup's cab, bending his neck to the left. He experienced pain in his neck, a numb sensation in the rest of his body, and was unable to move.
A police officer who responded to the accident scene recalled that Hoag was bleeding from the head and knee, was very excited, jumping up and down, and calling for an ambulance. According to the officer, Hoag's eyes were glassy and bloodshot and his breath *44 smelled of alcohol. These observations led the officer to conclude that Hoag was intoxicated.[8]
Hoag gave a statement to the officer that the accident happened due to the fact that Green had just reached over and took a cigarette from his mouth and shortly thereafter he reached towards her to take it back and took his eyes off the road. At trial, however, Green denied taking a cigarette from Hoag, and said that she was asleep when the accident occurred. She did not object to Hoag's "story" until after he filed the complaint against her.
The rescue squad rushed Lombardo to the Trauma Center at University Hospital in Newark after they had stabilized his neck with a collar. At the hospital, doctors attached a device known as Gardner Wells Tongs to his head and performed a procedure to determine whether he was bleeding internally. Lombardo continued to experience pain in his neck and from the tongs. He had feeling in his lower extremities, but still could not move them. He was moved from the Trauma Center to the Neurological Intensive Care unit, where he continued to suffer severe neck pain, leg spasms, vomiting, a loss of sensation on his left side, and inability to move his extremities. Doctors diagnosed Lombardo as suffering from a fracture subluxation of the spine resulting in compression of his spinal cord. Realignment of his spine through use of the tongs was unsuccessful. On June 4, 1986, a surgeon successfully operated on Lombardo and removed a part of the fractured bone structure. A Luque Ring was used to stabilize his spine so that it would not re-subluxate.[9]
*45 Following surgery, the tongs device was replaced with a halo, which was attached to Lombardo's head and also to a vest. Lombardo wore the halo continuously from June 5 to August 18, 1986. While at the hospital Lombardo developed bedsores and was unable to feed himself or perform normal bodily functions; hence, catheterization was necessary several times a day.
On June 18, 1986, Lombardo went to Kessler Institute for Rehabilitation (Kessler). Lombardo's doctor testified as to his neurological injuries. She diagnosed his condition as incomplete quadriplegia at C6 level, with neurological bladder and bowel secondary to C4-5 subluxation. Lombardo underwent therapy to regain his motor skills. He continued to need catheterization and suppositories to aid him in excreting waste, was still unable to tend to his own personal hygiene, and suffered from spasticity, especially in his legs. Although he needed people to hold him up when he initially resumed walking, eventually he progressed to the use of a quad cane, then to a straight cane, which he used until February 1987.
By the time Kessler discharged Lombardo from inpatient treatment on October 30, 1986, he had regained capacity to independently handle his bathroom functions. His medical records indicated continued progress. Lombardo had outpatient treatment, including therapy, from November 1986 until August 1987, to increase his fine motor skills. As of the May 1992 trial, he had not received medical treatment beyond checkups since August 1987.
Lombardo went back to school in January 1987, changing his focus of study from law enforcement to accounting due to the accident. He said he still had pain and limited movement in his neck, attributable to the Luque ring, and had to do stretching exercises every morning. His left arm lacks normal range of motion and he suffers from a limp and a loss of sensation from the waist down. In addition, he testified to a general weakness in both legs, as well as spasms, and that he can no longer play sports.
*46 Lombardo also told the jury that he cannot engage in normal sexual relations because of difficulties in maintaining an erection. On cross-examination, however, he seemed to concede that he is able to have sexual relations, but that it does not feel the same as before his injuries because he does not get aroused the same way. He informed the jury that he sought counselling for sexual dysfunctioning.
The trial judge denied Lombardo's new trial motion,[10] concluding that the jury's verdict, which found Lombardo 15% negligent and Niemeyer not negligent, was not necessarily inconsistent because the jury could have concluded from the evidence that (1) Hoag was not intoxicated, but was still unfit to drive due to being "wild", and (2) Lombardo, as a passenger, failed to exercise due care in not exiting the vehicle when Hoag took over the driving from Niemeyer. Alternatively, he opined that the jury could have concluded that Hoag was intoxicated and that Lombardo knew this, but that Niemeyer neither knew nor should have known it. As to damages, the trial judge concluded that there was no clear miscarriage of justice, as the jury was "entitled to consider the possibility that [Lombardo] made a very good recovery and might continue to make a good recovery and not have lingering effects to the severest degree that [Lombardo's attorney] suggested to them." As the trial judge noted in denying Lombardo's motion for a new trial, "Virtually every fact in the case was disputed[,] [s]ometimes by three or more versions of the events."
On appeal, Lombardo argues that the trial judge erred in instructing the jury that both he and Niemeyer, who drove Hoag's pickup truck from the shore to his own home where he left operation of the vehicle to Hoag, had the same duty to take reasonably prudent measures to prevent the operation of the motor vehicle by Hoag. Lombardo also argues that the verdict is inconsistent and requires a new trial on liability and damages. In *47 addition, he contends that a new trial should be granted because of the claimed inadequate damage award. Finally, Lombardo argues that the trial judge erred in failing to instruct the jury as to damages for loss of enjoyment of life.

I.
In addressing Lombardo's argument that the trial judge erred in charging that he and Niemeyer had the same duty to take reasonably prudent measures to prevent operation of the motor vehicle by an intoxicated owner, Lombardo essentially embraces the duty imposed on a non-owner who drove the vehicle by the motion judge's pretrial determination in Lombardo v. Hoag, 237 N.J. Super. 87, 566 A.2d 1185 (Law Div. 1989). Lombardo sought such a ruling as to Niemeyer and was apparently satisfied with the duty so created, although the motion judge denied imposing liability as a matter of law. As noted, Neimeyer's application for leave to appeal was denied. Presumably because the jury determined that Niemeyer was not negligent, he did not cross-appeal from the final judgment. Nonetheless, for us to properly review the issues on appeal, we must consider them in the context of appropriate legal duties.
Of course, we are not bound by a trial court's construction of the legal principles. We have serious reservations about the duty created by the reported Lombardo opinion, and its extension by the trial judge to include not only a non-owner who drove the vehicle and subsequently relinquished control to the owner, but also to any person, including passengers, in a position to prevent an intoxicated person from driving.
When the Law Division judge concluded, 237 N.J. Super. at 90, 566 A.2d at 1185, that he should consider "whether the concept of negligent entrustment should be extended to encompass situations where the person who has temporary use of a vehicle returns the vehicle to its rightful owner, who he knows or should have known is intoxicated," he enunciated a new duty, primarily based on what he considered public policy and morality principles. In doing so, *48 the motion judge also drew inferences and made findings of fact that should have been left to the jury when he found that Niemeyer's act of driving from the shore "was motivated by concern for his own safety and not the safety of his friends." Id. at 91.
We disagree with the reported decision and consider it an unwarranted extension of established legal principles, including those expressed in Restatement (Second) of Torts § 308 (1965). See Lind v. Slowinski, 450 N.W.2d 353, 357 (Minn. Ct. App. 1990) (One passenger does not owe a duty to another passenger absent either physical interference with the driver's operation of the vehicle or a special relationship with the injured passenger.). Suffice it to say that it is generally not considered the function of a trial court to create an exception to an established rule of law. Such a function is generally reserved for the Supreme Court or the Legislature. See Perry v. Swedesboro, 204 N.J. Super. 103, 114, 497 A.2d 922 (Law Div. 1985), aff'd, 214 N.J. Super. 488, 520 A.2d 410 (App.Div. 1986), certif. denied, 107 N.J. 153, 526 A.2d 212 (1987); Sykes v. Zook Enterprises, Inc., 215 N.J. Super. 461, 471, 521 A.2d 1380 (Law Div. 1987).
Our review of the negligent entrustment duty enunciated by the motion judge and the trial court's further extension of it to all persons, including the vehicle's passengers, in a position to prevent an intoxicated person from driving, leads us to express our disagreement with and overrule Lombardo v. Hoag, supra (237 N.J. Super. 87, 566 A.2d 1185).

II.
We thus are compelled to take into consideration the issues raised by the Law Division decision. Clearly, "[t]here can be no actionable negligence if defendant" did not violate any "duty to the injured plaintiff." Ryans v. Lowell, 197 N.J. Super. 266, 275, 484 A.2d 1253 (App.Div. 1984). The existence of a legal duty is a question of law to be decided initially by the court. Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527 (1991) ("The *49 question of whether a duty exists is a matter of law properly decided by the court, not the jury, and is largely a question of fairness or policy.").
Even viewed under the law of the case doctrine, an earlier ruling "is merely a non-binding decisional guide addressed to the good sense of the [trial] court in the form of `a cautionary admonition' against relitigation." State v. Hale, 127 N.J. Super. 407, 411, 317 A.2d 731 (App.Div. 1974). See State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76 (1985) ("[T]he `law of the case' doctrine insofar as it is applied to rules or orders of an interlocutory nature is itself discretionary."); Daniel v. Department of Transportation, 239 N.J. Super. 563, 581, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990); Sisler v. Gannett Co., Inc., 222 N.J. Super. 153, 159, 536 A.2d 299 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988) (The law of the case "doctrine is discretionary, and the court is never irrevocably bound by its prior interlocutory ruling in the same case."). Cf. Bellardini v. Krikorian, 222 N.J. Super. 457, 464, 537 A.2d 700 (App.Div. 1988) (in limine rulings, whether on evidence or legal issues, should be approached with caution because the facts developed at trial may impact the ruling).
Hence, in considering whether the trial judge erred in extending the duty imposed on Niemeyer to the other passengers in the car, i.e., to plaintiff Lombardo and defendant Green, it must be determined whether such a duty even exists.[11] The trial judge interpreted *50 the duty imposed in Lombardo v. Hoag as extending to "everybody in the planet who happens to be in a position of stopping Hoag from driving having determined he was drunk." The judge instructed the jury:
What if you find that defendant was  what about if you find that alcohol was a cause of the accident? Then you have to consider Niemeyer and Keith Lombardo and as to whether they were negligent. Did they know or should they have known that Hoag was intoxicated? And should they have taken reasonable steps to prevent him from driving? And if they were negligent in doing that, was this a proximate cause of the accident and injuries?
Now, Mr. Lombardo is also charged with that by the Defendants; that he should not have let Hoag drive because he should have known  because he knew or should have known that he was intoxicated. They are claiming that was a proximate cause of his injuries. The issue of Mr. Lombardo, should he have taken steps to prevent Hoag from driving? And was he negligent in not doing that?
* * * * * * * *
For the Defendants to be negligent, they must have had a duty to the Plaintiff which they breached or failed to comply with. Under the law a person has an obligation to prevent another from driving while intoxicated, to the extent of having to take reasonable steps to prevent that person from driving while intoxicated. Each of us who knows or should know that the owner of a vehicle is under the influence of alcohol, has a duty to take reasonably prudent measures to prevent the operation of the motor vehicle by the owner. In assessing the Plaintiff's claim for damages against the Defendant, Niemeyer, you must determine whether number one, was Mr. Hoag unfit to drive that night by reason of alcohol? And number two, if he was unfit by reason of consumption of alcohol, whether Mr. Niemeyer, number one, knew it or should have known it, and number two, whether *51 Mr. Niemeyer should have taken reasonably prudent steps to prevent Mr. Hoag from driving the automobile.
* * * * * * * *
If you determine under all the circumstances Mr. Hoag was not unfit to drive by reason of consumption of alcohol, then the Defendant, Niemeyer, is not liable to the Plaintiff. But if Mr. Hoag was unfit to drive, you must decide whether Mr. Niemeyer knew or should have known that and in spite of it he still allowed Mr. Hoag to operate his own vehicle. But if you determine under all the circumstances that Mr. Niemeyer did not know or should not have known of Mr. Hoag's unfitness to drive, even if you believe that Mr. Hoag was unfit to drive, then you would return a verdict in favor of Mr. Niemeyer
* * * * * * * *
Now, I'd like to instruct you also on the claim by Mr. Niemeyer that Mr. Lombardo had the same duty to take reasonable steps to prevent Mr. Hoag from driving, if Mr. Lombardo knew or should have known that Hoag was unfit to drive yet still allowed him to do so. I instruct you that the law requires of Mr. Lombardo the same standard of care, same standard of conduct, no more and no less, than it requires of Mr. Niemeyer under the circumstances of this case. Thus, if you find that Mr. Hoag was unfit to drive and that Mr. Lombardo knew or should have known this and failed to take reasonable steps to prevent him from doing so, then he too breached a duty, and I will describe the effect of that shortly. It makes no difference in your determination of this issue that Mr. Lombardo was a passenger at the time the drivers switched and that Mr. Niemeyer had been driving. The law requires the same duty of all, to know or should know of another's unfitness to drive and to take reasonable steps to prevent him or her from driving. In addition, that same duty applies to Adina Green. So you need to determine whether Adina Green knew or should have known of if [sic] Mr. Hoag was unfit to drive. And if so, whether she failed to take reasonable steps to prevent Mr. Hoag from driving.
Then if you determine that Mr. Hoag was unfit to drive and that Mr. Niemeyer, Mr. Lombardo and or Miss Green knew or should have known that fact, you should determine if the steps that person took, if any, were reasonable under all the circumstances. If you find that any of these people; that is, Mr. Niemeyer, Miss Green or the Plaintiff did know or should have known that Mr. Hoag was unfit to drive but that that person did not take reasonable steps to prevent him from driving, then that person has breached his or her duty. [Emphasis added.]
The trial judge broadly applied the September 15, 1989 published opinion,[12] and went beyond the actual terms of the September *52 27, 1989 order, which imposed a "duty" only "upon one in control of a motor vehicle," in formulating his jury instructions. The motion judge must have granted Lombardo's motion for the reasons expressed in his written opinion, and usually the implementing order only refers to reasons so expressed because that is generally the basis for the order.
Here, the form of order as drafted by plaintiff's attorney, and as entered by the court, was more specific.
Although Lombardo now objects to the trial judge's extension of the new duty to anyone beyond Niemeyer, as the driver who had "control" through operation of the vehicle and returned such control to Hoag, the law of the case doctrine does not apply because the parties did not contest and the court did not decide that issue in the prior opinion. Lanzet v. Greenberg, 126 N.J. 168, 192, 594 A.2d 1309 (1991). It is questionable whether Niemeyer had anything more than mechanical control of the vehicle. Arguably, Niemeyer operated it under the consent and control of Hoag, and only within the scope of authority then given. The motion judge dismissed Niemeyer's counterclaim, which specifically sought a declaration of Lombardo's negligence based on Lombardo, because Niemeyer erroneously asserted the already pleaded affirmative defense of Lombardo's negligence in the guise of a counterclaim. See R. 4:5-4. Lombardo's negligence remained in the case.
As mentioned, the motion judge's opinion in Lombardo v. Hoag relied heavily on principles of morality, public policy, and the problems of drunk driving. 237 N.J. Super. at 92-96, 566 A.2d 1185. Principles of morality, however, do not necessarily underpin all legal duties owed by one individual to another, as the perimeters of such duties would be elusive. In addition to stating that a duty extended to "everybody in the planet who happens to be in a position of stopping Hoag from driving having determined he was *53 drunk," the trial judge also said this new rule of law "applies to Lombardo and Adina Green, anybody who was in a position to take reasonable steps to prevent him from driving." This would be in addition to the duty imposed on a passenger not to interfere with a driver's operation of a vehicle or to ride in a vehicle whose driver is known to be intoxicated. See discussion infra opinion pgs. 54-56, 634 A.2d at pgs. 559-560.
One problem with such an extension of that particular form of a duty is that the standard is so broad that it would conceivably apply to gas station attendants, toll booth collectors, parking lot attendants, repair services, and onlookers who may have observed the participants get into a vehicle driven by an intoxicated person. Thus, the trial judge's instruction, quoted above (particularly the emphasized portion), erroneously expanded any duty of a passenger beyond reasonable boundaries.
Further, such an over-broad duty would open a Pandora's Box of potential liability and responsibility problems. Potential liability would then exist (on the passenger attempting to prevent the owner from driving) for conversion of another's property, or even theft or robbery charges. There has been no indication or consideration of a concomitant privilege for the actor for being honestly mistaken about a person's sobriety if one takes the keys or automobile from the rightful owner of a vehicle. There is also the potential mischief of affording a defense to potential or actual perpetrators of criminal acts. Accordingly, we reject that portion of the trial judge's instructions that imposed a duty on all persons, including passengers to prevent the owner of a vehicle from driving if that owner is or is thought to be intoxicated.
Thus, the judgment against Lombardo and Green (who has not challenged the verdict) is not sustainable under the Lombardo rationale. It does not mean, however, that the jury could not have found either Lombardo or Green, or both, negligent. The trial judge properly charged the jury as to usual negligence principles with respect to both Lombardo and Green.
*54 In considering the usual rules of negligence of a passenger we need only address those that relate to Lombardo since as to Green there was no objection to the charge, her actions are not challenged in this appeal, and she was not a person asserting a claim, at least in this appeal. A passenger has a duty not to interfere with the operations of the driver. See 61 C.J.S. Motor Vehicle § 486(5) (1970) (A passenger will be held contributorily negligent for interfering with a driver's operation and control of the motor vehicle.); Lind v. Slowinski, supra (450 N.W.2d at 357) (A passenger who interferes with a driver's operation of the motor vehicle may be liable to others.).
A passenger also has a duty to protect himself or herself. See Ambrose v. Cyphers, 29 N.J. 138, 150, 148 A.2d 465 (1959) (Weintraub, C.J.) ("[A] passenger is bound to exercise for his own safety the care of a reasonably prudent person under the circumstances."); Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 176, 113 A.2d 13 (1955) (General rule is that passenger is "bound to exercise such care for his own safety as the exigencies of the situation require."); Tabor v. O'Grady, 59 N.J. Super. 330, 337, 157 A.2d 701 (App.Div. 1960), modified in part on reh'g, 61 N.J. Super. 446, 161 A.2d 267 (App.Div. 1960) ("A passenger in an automobile must exercise such reasonable care and caution as an ordinarily prudent person would exercise under like circumstances.").
Such duty, however, is not without limitation. See Ambrose, supra (29 N.J. at 150-151, 148 A.2d 465); Tabor, supra (59 N.J. Super. at 337-339, 157 A.2d 701). In this regard, the trial judge instructed the jury:
When it should become apparent to a reasonably prudent person that the vehicle is being driven negligently, reasonable care requires the passenger to protest or remonstrate with the driver in an effort to persuade him to drive carefully. And if such protests are disregarded, he has a duty to leave the car when a reasonable opportunity is afforded, if a reasonably prudent man would do so in like circumstances.
While the negligence of the operator of an automobile is not chargeable to a passenger who has no control over the car, still the passenger is bound to exercise such care for his own safety as the circumstances of the case require. The *55 passenger in a car, in the absence of any facts or circumstances indicating the contrary, is not required to anticipate that the driver, who has exclusive control and management of the vehicle, will enter a sphere of danger or may not exercise proper care, such as failure to keep the speed of the vehicle within normal limits. A passenger in an automobile is under the duty to exercise such degree of care for his own safety as the exigencies of the situation reasonably require. ...
The test to be applied in determining whether voluntarily riding in a motor vehicle operated by a person under the influence of intoxicating liquor constitutes negligence on the part of the Plaintiff, is whether an ordinarily cautious and prudent person would under the same or similar circumstances have incurred the risk of riding with the driver. If you find that the Plaintiff voluntarily rode in an automobile operated by a person under the influence of or affected by intoxicating liquor after the Plaintiff knew, or in the exercise of reasonable care should have known of the driver's condition, and if you also find that an ordinarily cautious and prudent person would not have incurred the risk of riding with such a driver under the same or similar circumstances, you may find the Plaintiff guilty of contributory negligence provided the intoxication of the driver was a proximate cause of the accident and the injuries resulting therefrom. [Emphasis added.]
When the trial judge denied Lombardo's new trial motion he rejected the argument that the jury verdict was inconsistent. He indicated that the jury may have concluded from the extensive testimony that Lombardo knew that Hoag was intoxicated, but that Niemeyer did not know and should not have known that fact. With regard to Green, the jury was advised that she settled prior to trial, but that it could determine negligence on her part due to the cigarette incident that immediately preceded the accident. Our review of the record satisfies us that both conclusions are supported by the record. However, the issue of Green's negligence has not been contested in this appeal and we do not address it further.
Recall that Niemeyer testified that he believed Hoag may have consumed as little as one or two beers on the evening in question. According to Niemeyer's testimony, he did not believe, based on Hoag's actions and Niemeyer's previous experiences drinking with Hoag, that Hoag was drunk, only that Hoag was perhaps "buzzed" or a little tired. Rehm's and Green's testimony was substantially to the same effect. Niemeyer also testified that he asked Hoag out of common courtesy whether he was able to drive and received an affirmative response.
*56 On the other hand, Lombardo testified that he witnessed Hoag drink many beers and that, as a result, Hoag appeared "very intoxicated," with glazed and bloodshot eyes and behavior that was loud and boisterous. Indeed, Lombardo explained at trial that his observations of Hoag led him to believe that Hoag was "unfit to drive," although he conceded that he did not share this opinion with anyone else.
The trial judge also instructed the jury that if they determined that Hoag was intoxicated, it would have to determine whether Niemeyer and Lombardo "knew or should have known" of Hoag's intoxication. Lombardo would apparently interpret this to mean that if Hoag was in fact intoxicated and Lombardo actually knew this, then Niemeyer should have automatically been charged with such knowledge. We reject that contention. It was a fact question for the jury. The jury could have reasonably concluded that Hoag was intoxicated and that Niemeyer neither knew nor should have known that at the time he left the car. Niemeyer's testimony was supported by that of Rehm, Green, and Hoag himself. Merely because there is evidence to support a different result does not authorize an appellate court to overturn a jury finding of no liability. Eyoma v. Falco, 247 N.J. Super. 435, 445, 589 A.2d 653 (App.Div. 1991).
Thus, the conclusion that the trial judge erred in expanding negligence theories and duties to the passengers (Lombardo and Green) does not resolve the issue of whether the trial judge properly submitted the comparative negligence of Lombardo to the jury.
There was certainly a basis from which the jury could have found Lombardo at least 15% responsible. Lombardo had testified that he not only thought Hoag was not capable of driving, but also that he knew Niemeyer had gotten out of the car and was not driving for the balance of the journey. The jury certainly could have determined that under the circumstances a reasonable passenger would either have asked Hoag to stop driving or gotten out of the vehicle at the earliest practicable time. We do not view *57 the verdict as inconsistent. The evidence would support a jury finding that Niemeyer was not aware that Hoag's ability to operate the vehicle was affected, as well as a finding that Lombardo was aware either that Hoag's ability to drive was affected or that Hoag was a reckless type of driver whether drunk or sober.
In addition, at the time of the accident Lombardo was occupying a portion of the pickup truck that was not intended for passenger use. Hence, another aspect of plaintiff's negligence might arise as to Lombardo acting as a reasonably prudent person due to the fact that he was riding in the back of a pickup truck that obviously was not intended for passengers and, indeed, the police had told the occupants of the vehicle this when they were stopped in Point Pleasant. See N.J.S.A. 39:4-69;[13]Division of Motor Vehicles v. Skuba, 3 N.J.A.R. 1, 7 (1981) ("[I]n the absence of any permanent fixtures or seats intended for passengers[,] the bed portion of a pick-up truck is not designed or intended for the conveyance of passengers.").

III.
We turn next to Lombardo's claims that the damage award was inadequate and that the judge erred in failing to instruct as to damages for loss of enjoyment of life. Judicial interference with an award of damages is inappropriate unless the award "is so disproportionate to the injury and resulting disability shown as to shock his conscience and to convince him that to sustain the award would be manifestly unjust." Baxter v. Fairmont Food Co., 74 N.J. 588, 596, 379 A.2d 225 (1977). Even if we believe that the award is lower than might be expected, that is not a basis to usurp the function of the jury. Cestero v. Ferrara, 110 N.J. Super. 264, 276, 265 A.2d 387 (App.Div. 1970), aff'd, 57 N.J. *58 497, 273 A.2d 761 (1971). Likewise, we do not disturb a trial judge's decision denying a motion for a new trial on that ground unless it clearly appears there was a miscarriage of justice. R. 2:10-1.
Considering the instructions given to the jury on damages, which included that it was to assess damages based on the evidence and the elements given in the jury instructions, and assess damages for the total extent of his injuries, we are unable to conclude that the damage award was so shockingly low as to require a new trial. The record supports the trial judge's analysis that, through rigorous rehabilitation efforts, Lombardo was able to make a remarkable recovery from severe injuries. The jury was entitled to take this into account.
We reject Lombardo's argument that the trial judge erred in failing to instruct the jury on damages for loss of enjoyment of life. In the usual case such elements of damage are readily included in the ambit of the broad damages charge taking into account pain, suffering, disability, and impairment. In addition to instructing the appropriate standards, the trial judge reminded the jury of the nature and function of money. Eyoma, supra (247 N.J. Super. 435, 589 A.2d 653), is inapposite and in our view is limited to situations where pain and suffering cannot be adequately addressed because of the comatose condition of plaintiff.[14] We agree with the trial judge that the complaints of "a loss of sensation" or "an absence of feeling," even if not precisely encompassed within the pain and suffering topics, are the type of injury covered by the general charge on impairment. The trial court adequately instructed the jury on all elements of damages, including impairment.
Affirmed.
NOTES
[1] Lombardo has not appealed from the jury determination finding him 15% negligent. He argues, however, that such determination evinces an inconsistent verdict. Green settled with plaintiff before trial and she has not participated in this appeal.
[2] A different judge authored the published opinion reported at 237 N.J. Super. 87, 566 A.2d 1185.
[3] Notwithstanding the other witnesses' testimony, Hoag stated that they left for the shore at 8:30 or 9:00 p.m.
[4] Hoag did not feel like driving. Niemeyer testified that he did not think that Hoag was intoxicated when they left for the shore.
[5] See infra opinion at pgs. 56-58, 634 A.2d at pg. 561.
[6] Niemeyer claimed that he asked Hoag if he (Niemeyer) should drive again, and Hoag responded, "if [you] want[] to drive, go ahead."
[7] At his deposition, Niemeyer described Hoag's appearance as a "late night hangover[,] [l]ike he was tired and ready to go to sleep."
[8] According to the published trial court opinion, Hoag was issued a summons for driving while intoxicated, but was subsequently found not guilty. 237 N.J. Super. at 89 n. 1, 566 A.2d 1185.
[9] The doctor testified at his videotaped deposition (shown to the jury at trial) that the spinal cord injury could affect "the legs, feet, the bowels or bladder, [and] the genital organs...." We merely note the somewhat speculative nature of this testimony.
[10] Apparently, the trial judge did not enter an order denying the motion for a new trial. No copy of such an order is in the record.
[11] The Lombardo rationale appears to have been rejected by out-of-state courts. In O'Gorman v. Antonio Rubinaccio & Sons, Inc., 408 Mass. 758, 563 N.E.2d 231, 234 n. 4 (1990), the court stated that the Lombardo opinion "was not examined by a New Jersey appellate court and does not appear to represent the current law anywhere." See also McGee v. Chalfant, 248 Kan. 434, 806 P.2d 980, 985 (1991) (Friends of visibly intoxicated motorist who drove him from party to where he had earlier parked his car, fully knowing that he would attempt to drive, had no duty to individual seriously injured in car accident with that intoxicated man.); Lather v. Berg, 519 N.E.2d 755, 764-765 (Ind. Ct. App. 1988) (Friends of intoxicated minor who became involved in high speed chase leading to the death of a police officer could not be held liable for negligent entrustment in returning his car keys to him knowing that he was intoxicated and intended to drive because they neither owned the car nor had a right to control it.); Knighten v. Sam's Parking Valet, 206 Cal. App.3d 69, 73-77, 253 Cal. Rptr. 365, 366-368 (1988) (Valet service had no duty to withhold automobile from intoxicated patron of restaurant, as there was no special relationship and thus no duty to control his conduct.); Sampson v. W.F. Enterprises, Inc., 611 S.W.2d 333 (Mo. Ct. App. 1980) (Automobile dealership not liable for negligent entrustment in returning pickup truck (after completing repairs) to intoxicated minor who was subsequently killed; dealership was only a bailee and had a duty to return the property.); Congini v. Portersville Valve Co., 504 Pa. 157, 470 A.2d 515 (1983); Bahm v. Dormanen, 168 Mont. 408, 543 P.2d 379 (1975); Wiggins v. Hughes Tool Co., 87 Nev. 190, 484 P.2d 566 (1971); Mills v. Continental Parking Corp., 86 Nev. 724, 475 P.2d 673 (1970).
[12] The opinion was somewhat at variance with the September 27, 1989 order. Defendants had not objected to the form of order when submitted to the Court by plaintiff's attorney. The order referred only to "a duty upon one in control of a motor vehicle, who knows or should have known, that the owner of the vehicle is under the influence of alcohol, to take reasonably prudent measures to prevent the operation of the motor vehicle by the owner."
[13] We can take judicial notice of N.J.S.A. 39:4-69 which provides:

No person shall ride on, and no operator shall knowingly allow a person to ride on a street car or vehicle, or on a portion thereof not designed or intended for the conveyance of passengers. This section shall not apply to an employee engaged in the necessary discharge of a duty.
[14] The mere fact that the Model Jury Charge  Civil § 6.11F (4th ed. 1992) now includes language by virtue of a recent amendment dealing with "compensation for the inability to pursue one's normal pleasure and enjoyment" is not determinative. The trial judge here correctly and adequately instructed the jury on damages.